OPINION
{¶ 1} Defendant-appellant, Marcus Colbert ("Colbert"), appeals the October 10, 2003 judgment entry of the Ashtabula County Court of Common Pleas sentencing Colbert to serve a prison term of ten years. For the following reasons, we affirm the lower court's judgment entry of sentence.
 {¶ 2} The charges against Colbert stemmed from his involvement in the March 21, 2003 murder of Willie Smith ("Smith") at a home, located at 4012 Station Avenue, Ashtabula, Ohio. Smith, a drug dealer, was involved in a dispute with Colbert's co-defendants regarding the selling of drugs on Station Avenue. The previous evening, Colbert's co-defendants had assaulted Smith and Smith, in turn, had made threats against Colbert's co-defendants. At about 6:20 p.m. on March 21, 2003, Colbert and his co-defendants went to the house where Smith was staying and confronted Smith on the front porch of the house. During the confrontation, co-defendant Richard Thomas Corpening shot Smith six times. Thereafter, Colbert fled the scene before turning himself into the police.
 {¶ 3} Colbert was indicted by the Ashtabula County Grand Jury on one count of Complicity to Aggravated Murder, with a gun specification, in violation of R.C. 2923.03 and 2903.01(A), and one count of Complicity to Murder, with a gun specification, in violation of R.C. 2923.03 and2903.02(A). On August 21, 2003, Colbert entered Alford pleas of guilty to Complicity to Voluntary Manslaughter, a first degree felony in violation of R.C. 2923.03 and 2903.03(A), and to Participating in a Criminal Gang, in violation of R.C. 2923.42(A), a felony of the second degree. See NorthCarolina v. Alford (1970), 400 U.S. 25.
 {¶ 4} The trial court sentenced Colbert to the maximum prison term of ten years for Complicity to Voluntary Manslaughter and to a prison term of five years for Participating in a Criminal Gang, to be served concurrently. Colbert timely appeals and raises the following assignment of error: "The trial court erred and abused its discretion to the prejudice of the defendant-appellant when it sentenced him to the maximum sentence."
 {¶ 5} An appellate court reviews a felony sentence under a clear and convincing evidence standard of review. R.C. 2953.08(G)(2). An appellate court may not disturb a sentence unless the court "clearly and convincingly finds" that "the record does not support the sentencing court's findings," or that "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a) and (b). Clear and convincing evidence is that evidence "which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v.Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 6} Pursuant to R.C. 2929.14(C), a "court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense * * * only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders * * *, and upon certain repeat violent offenders in accordance with division (D)(2) of this section." As interpreted by the Ohio Supreme Court, "[i]n order to lawfully impose the maximum term for a single offense, the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)." Statev. Edmonson, 86 Ohio St.3d 324, 329, 1999-Ohio-110.
 {¶ 7} In addition to stating its reasons for imposing the maximum sentence under R.C. 2929.14(C), "the trial court must also comply with R.C. 2929.19(B)(2)(d), which requires the trial court to give its reasons for imposing the maximum prison term." State v. Chike, 11th Dist. No. 2001-L-120, 2002-Ohio-6912, at ¶ 8; State v. Edmonson (Sept. 25, 1998), 11th Dist. No. 97-P-0067, 1998 Ohio App. LEXIS 4541, at *21 ("the court must submit findings of the operative facts and the reasoning as to why the court considered this to be one of the `worst forms of the offense'"), aff'd 86 Ohio St.3d 324, 1999-Ohio-110.
 {¶ 8} In the present case, the trial court found on the record [at the sentencing hearing] "[t]his is the worst form of a complicity to commit voluntary manslaughter offense." The courted based its decision on the fact that the crime was premeditated; the crime was part of an organized criminal activity; and the crime was committed in broad daylight. Colbert argues that his is not one of the worst forms of complicity to voluntary manslaughter because he was not the actual shooter and was not involved in the drug deal or the assault leading up to the shooting. We disagree.
 {¶ 9} This court has previously considered and rejected this argument. We have held that "[t]he argument that appellant is less culpable because he was convicted as an accomplice ignores R.C. 2923.03(F), which provides: `Whoever violates this section is guilty of complicity in the commission of an offense, and shall be prosecuted and punished as ifhe were a principal offender. A charge of complicity may be stated in terms of this section, or in terms of the principal offense. [Emphasis added]." State v. Whittenberger (Dec. 3, 1999), 11th Dist. No. 98-P-0047, 1999 Ohio App. LEXIS 5770, at *9. Therefore, as long as the gangland-style killing of Willie Smith constitutes one of the worst forms of voluntary manslaughter, it is within the court's discretion whether to impose the maximum sentence regardless of Colbert's precise role in that killing.[1]
 {¶ 10} Even if the trial court did err in finding this one of the worst forms of complicity, the trial court additionally found that Colbert, age twenty at the time of Smith's murder, "possesses [sic] the greatest likelihood of committing future crimes." Cf. R.C. 2929.12(D). This section of the Revised Code sets forth five factors for the sentencing court to consider when determining the likelihood of an offender committing future crimes. The trial court's finding that Colbert possesses the "greatest likelihood" of committing future crimes is supported by four of the five statutory factors: Colbert was "out on bail or under a felony court sanction or post-release control when the [current] offense was committed," R.C. 2929.12(D)(1); Colbert's "massive" number of criminal and/or juvenile adjudications, R.C. 2929.12(D)(2); Colbert's failure to respond favorably to previous sanctions, R.C.2929.12(D)(3); and Colbert's lack of genuine remorse, R.C. 2929.12(D)(5).
 {¶ 11} We hold that Colbert's record of juvenile adjudications, by itself, "clearly and convincingly" supports the finding that Colbert poses the greatest likelihood of committing future crimes and, therefore, the imposition of the maximum sentence.[2] Cf. Chike, 2002-Ohio-6912, at ¶ 10 ("There is no requirement that more than one of the five factors be present in order for the trial court to determine that the offender poses the greatest likelihood of committing future crimes.").
 {¶ 12} The First District Court of Appeals has recently held that the "fact" of previous juvenile-delinquency adjudications cannot be used to justify a finding regarding the likelihood of future crime under the "prior conviction" exception in Blakely v. Washington (2004), ___ U.S. ___. State v. Montgomery, 1st App. No. C-040190, 2005-Ohio-1018, at ¶13. The First District relies on case law for the proposition that "in Ohio * * * an adjudication that a juvenile is delinquent is not the same as a criminal conviction." Id. (citations omitted).
 {¶ 13} We note that, for the purpose of determining an offender's likelihood of committing future crimes, a court must consider an offender's delinquency adjudications as well as his history of criminal convictions. R.C. 2929.12(D)(2). In practice, trial courts routinely rely on juvenile records to impose non-minimum, maximum, and consecutive sentences. See, e.g., State v. Lamberson (March 19, 2001), 12th App. No. CA2000-04-012, 2001 Ohio App. LEXIS 1255, at *48.
 {¶ 14} Although juvenile proceedings have been characterized as "civil" rather than "criminal" proceedings, the Ohio Supreme Court has made clear that this distinction is of limited significance. "Whatever their label, juvenile delinquency laws feature inherently criminal aspects that we cannot ignore. * * * For this reason, numerous constitutional safeguards normally reserved for criminal prosecutions are equally applicable to juvenile delinquency proceedings. * * * Just as we cannot ignore the criminal aspects inherent in juvenile proceedings for purposes of affording certain constitutional protections, we also cannot ignore the criminality inherent in juvenile conduct that violates criminal statutes. * * * Whether the state prosecutes a criminal action or a juvenile delinquency matter, its goal is the same: to vindicate a vital interest in the enforcement of criminal laws." State v. Walls,96 Ohio St.3d 437, 2002-Ohio-5059, at ¶ 26 (emphasis sic) (internal citations omitted).
 {¶ 15} Therefore, a trial judge may consider an offender's juvenile record for the purposes of sentencing.
 {¶ 16} In Blakely, and earlier in Apprendi v. New Jersey (2000),530 U.S. 466, the United States Supreme Court held that "[other] than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 124 S.Ct. at 2536, citingApprendi, 530 U.S. at 490.
 {¶ 17} The Supreme Court has recently shed light upon the nature of the "prior conviction" exception in Shepard v. United States (2005),125 S.Ct. 1254. In Shepard, the court reconsidered what sort of evidence a sentencing judge may consider to establish the existence of prior "generic" convictions under the Armed Career Criminal Act ("ACCA"). Under prior case law, the factual basis of a prior conviction could be established "only by referring to charging documents filed in the court of conviction, or to recorded judicial acts of that court * * *, as in giving instruction to the jury." Id. at 1259, citing Taylor v. UnitedStates (1990), 495 U.S. 575. The Shepard court reaffirmed this prior case law, noting that it "anticipated the very rule later imposed [inApprendi and its progeny] for the sake of preserving the Sixth Amendment
right, that any fact other than a prior conviction sufficient to raise the limit of the possible federal sentence must be found by a jury * * *." Id. at 1262, citing Jones v. United States, 526 U.S. 227, 243 n. 6, and Apprendi, 530 U.S. at 490. In Shepard, the Supreme Court characterized the sort of evidence that may be considered to establish the facts of a prior conviction to include evidence that bears "the conclusive significance of a prior judicial record," such as "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." Id. at 1262-1263.
 {¶ 18} In light of the foregoing, we hold that delinquency adjudications bear "the conclusive significance of a prior judicial record" and, therefore, may be considered by a sentencing court under the "prior conviction" exception to the rule of Apprendi and Blakely.
 {¶ 19} Colbert's sole assignment of error is without merit. The ten-year sentence imposed by the Ashtabula County Court of Common Pleas is affirmed.
Rice, J., concurs, O'Neill, J., dissents with a Dissenting Opinion.
[1] The court rejected Colbert's characterization of his involvement as being in the wrong place at the wrong time. The court stated: "The evidence is clear in this case that the four people that were ultimately charged with complicity, one of which is Mr. Colbert, walked up, stood behind Corpening at the base of the steps, listened to what was being said, and — by their mere physical presence, I think were lending their support, backing him up, telling the world, if you do anything to our friend Corpening, who's going to kill this guy, you got to face and deal with us."
[2] The trial court's recitation of Colbert's juvenile record is as follows: "It starts out in December of '94, and as near as I can tell, the defendant's [sic] about twelve years old. Criminal damaging and endangering. * * * December '94, adjudicated delinquent based on an assault charge. February '95, curfew and home truancy. May '96, curfew and home truancy. July '96, same thing, curfew and home truancy. In August '96, curfew and home truancy. There for about six months you were in Juvenile Court every month. October '96, probation violation. 12/96, probation violation. May '97, defrauding delivery. June '97 probation violation. Another probation violation the same month. A third one the next month in July. Another one in September of '97. Another probation violation, October '97, on the 2nd. October 24th, another probation violation. And then you're charged with assault in December '97. Probation violation, January '98. February '98, menacing. Assault, March of '98. Probation violations in April and May of '98. Possession of drugs, which would have been a felony offense, in October of '98. Domestic violence, two counts, October '98. It goes on. Another domestic violence, two counts, March of '99. October '99, parole revocation. School truancy in December of '99. January 2000, parole violation. January 2000, a week later, felonious assault and serious physical harm. That's a felony of the second degree in this Court. September 2000, curfew and home truancy. September 2000, same thing. October 2000, parole violation. March '01, tampering with evidence, carrying concealed weapons. March '01, parole violation. August '01 receiving stolen property. Than as an adult, in June of '02, possession of Vicodin, that's possession of drugs. Apparently, that charge was dismissed in Municipal Court. You get the instant offense. And then you've got another assault charge here in July of '03. This Court can't help but believe that the Juvenile Court was trying to work with you while you were eleven, twelve, thirteen plus years. You were in there almost on a weekly or monthly basis and you just thumb your nose at the whole system. The probation, the parole, nothing worked. The treatment that was offered to you didn't work. And then you come out, and as a result of these recent charges, we get a death."