The STATE of Ohio, Appellee,

v.

SERRANO, Appellant.

[Cite as *State v. Serrano*, 164 Ohio App.3d 103, 2005-Ohio-5606.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2005–P–0003.

Decided Oct. 21, 2005.

104

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellee.

Wildon V. Ellison, for appellant.

DIANE V. GRENDELL, Judge.

{¶ 1} Defendant-appellant, Jose Serrano, appeals the judgment of the Portage County Court of Common Pleas on a jury verdict convicting him of one count of felonious assault, a felony of the second degree, in violation of R.C. 2903.11, and sentencing him to a four-year term of incarceration. We affirm the judgment of the trial court.

{¶ 2} The charges for which Serrano was convicted stem from an incident that occurred on the afternoon of June 24, 2004, at Pinegate Trailer Park in Ravenna Township, Ohio. Testimony adduced at trial revealed that Robert Henry, a resident of the park, drove through the park, stopping his minivan near the trailer of Cynthia Grimm. James Liddle, a resident of the park and a friend of Henry's, approached Henry's vehicle and began a discussion about Liddle's assisting Henry with some work on one of his trailers. While Liddle was sitting in Henry's van, Serrano approached the passenger-side and began banging on the passenger-side window of the vehicle and yelling at Liddle. Henry unlocked the vehicle to get out and confront Serrano for beating on the window of his new van. Serrano then opened the passenger side door and grabbed at Liddle, producing an 11- to 12-inch kitchen knife and stabbing at Liddle, hitting his cell phone instead. Liddle escaped from the driver's side of the minivan and ran to his trailer to call police. Serrano was subsequently arrested and taken into custody.

{¶ 3} On July 1, 2004, Serrano was indicted on one count of felonious assault, a second-degree felony, in violation of R.C. 2903.11(A)(2).

{¶ 4} The matter proceeded to trial on September 28, 2004. Following a two-day trial, the jury returned a guilty verdict. On December 27, 2004, Serrano was sentenced to four years in prison.

{¶ 5} Serrano timely appeals, asserting four assignments of error:

{¶ 6} "[1.] The trial court committed plain error to the prejudice of the appellant, by failing to instruct the jury on the inferior offense of aggravated

assault as an alternative conviction to felonious assault pursuant to law and Crim.R. 30.

{¶ 7} "[2.] The trial court erred to the prejudice of appellant, when the jury rendered a guilty verdict of felonious assault which is against the manifest weight of the evidence.

{¶ 8} "[3.] The court erred to the prejudice of appellant, by not considering the mitigation factors under R.C. 2929.12(C) and (E) and failing to address why the minimum sentence was not appropriate.

{¶ 9} "[4.] The court erred to the prejudice of appellant, in sentencing appellant with fact finding by the court and not by a jury in violation of his Sixth Amendment right to trial by jury and is therefore unconstitutional."

{¶ 10} For discussion purposes, the assignments of error will be addressed out of order.

{¶ 11} In his second assignment of error, Serrano complains that his conviction was against the manifest weight of the evidence, arguing that the various inconsistencies in the testimony of the witnesses fail to support Serrano's conviction for felonious assault. Serrano argues that based upon inconsistencies in the testimony of state's witnesses Henry, Liddle, and Grimm, the jury could not possibly have found him guilty of felonious assault without losing its way and creating a manifest miscarriage of justice. We disagree.

{¶ 12} Manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. The concepts of sufficiency of the evidence and manifest weight of the evidence are distinct. " 'Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while 'manifest weight' contests the believability of the evidence presented." *State v. Schlee* (Dec. 23, 1994), 11th Dist. No. 93–L–082, 1994 WL 738452, at *4. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, at paragraph one of the syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a 'thirteenth juror' " and may "disagree[ ] with the factfinder's resolution of the conflicting testimony." *Thompkins,* 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

"The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390, 678 N.E.2d 541 (Cook J., concurring).

{¶ 13} In the case sub judice, there were six witnesses who testified at trial: three for the prosecution, and three for the defense. Immediately apparent from the testimony and evidence adduced at trial is the fact that all of the persons involved or witnessing the incident have complicated and overlapping personal histories and relationships.

{¶ 14} Serrano claims inconsistencies in the testimony of state's witnesses Henry, Liddle, and Grimm with respect to (1) the reason Henry was in front of Grimm's trailer, (2) the time frame relating to Liddle's entry into Henry's van, (3) the number of times Serrano struck the window of Henry's van, (4) the number of knives Serrano carried, (5) the first time Henry saw Serrano produce the knife, and (6) the testimony witnesses gave at trial and the statements they made to police.

{¶ 15} In order to prove felonious assault under R.C. 2903.11, the state must produce evidence, beyond a reasonable doubt, that the defendant knowingly "[c]ause[d] or *attempt[ed] to cause* physical harm to another * * * by means of a deadly weapon or dangerous ordinance." (Emphasis added.) R.C. 2903.11(A)(2).

{¶ 16} A "deadly weapon," for the purposes of felonious assault is "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A); R.C. 2903.11(E)(1).

{¶ 17} While our review of the record does reveal some inconsistencies with respect to the prosecution witnesses' testimony concerning the aforementioned issues, none of these are determinative as to the issue of whether the elements of felonious assault were proven beyond a reasonable doubt. All three witnesses for the prosecution testified that when the doors to the van were unlocked, Serrano produced a knife that was approximately 11 to 12 inches long and attempted to stab Liddle with it. The fact that Serrano did not ultimately succeed is irrelevant for the purposes of the charge against him because R.C. 2903.11(A)(2) proscribes attempts to cause physical harm.

{¶ 18} Furthermore, none of the defense witnesses' testimony contradicted the prosecution's witnesses as to the essential elements of the crime for which Serrano was charged. Convictions are not against the manifest weight of the evidence merely because there is conflicting evidence presented at trial. *State v. Urbin*, 148 Ohio App.3d 293, 2002-Ohio-3410, 772 N.E.2d 1239, at ¶ 27; *State v. Haydon* (Dec. 22, 1999), 9th Dist. No. 19094, 1999 WL 1260298, at *7. Moreover, appellate courts will not reverse jury verdicts where "there is substan-

tial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." *State v. Eley* (1978), 56 Ohio St.2d 169, 10 O.O.3d 340, 383 N.E.2d 132, at syllabus. That is the case here. Serrano's second assignment of error is without merit.

{¶ 19} In his first assignment of error, Serrano, relying on the Supreme Court of Ohio's decision in *State v. Deem* (1988), 40 Ohio St.3d 205, 210–211, 533 N.E.2d 294, argues that the trial court committed plain error by failing to instruct the jury that it could find Serrano guilty on an inferior offense of aggravated assault since "there was ample evidence that [Serrano] was incited into using 'deadly' force."

{¶ 20} Since neither party disputes that Serrano did not object at trial to court's jury instructions, we, as an appellate court, will review the trial court's actions only to determine whether it committed plain error. See *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, at ¶ 50–52. Plain error is to be invoked "only under exceptional circumstances to prevent a manifest miscarriage of justice." *State v. Phillips* (1995), 74 Ohio St.3d 72, 83, 656 N.E.2d 643, citing *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, at paragraph three of the syllabus. In other words, there is no plain error unless the outcome of the trial would have been different in the absence of the error. *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.

{¶ 21} While *Deem* stands for the proposition that when a defendant presents sufficient evidence of serious provocation in a trial for felonious assault, "an instruction on aggravated assault * * * *must* be given," 40 Ohio St.3d at 211, 533 N.E.2d 294 (emphasis sic), our review of the transcript reveals that no such provocation existed. Serrano argues that the testimony of his live-in girlfriend, Rebecca Rossi, is sufficient to establish serious provocation sufficient to warrant the jury instruction because (1) Liddle's presence in the area was in violation of a civil protection order Rossi had filed against Liddle after she and Liddle had stopped dating, (2) Liddle was wearing Serrano's clothing, and (3) Henry allegedly produced a knife and came after Serrano, stating, "Come over here, mother fucker, I'm going to slit your throat." Again, we disagree.

{¶ 22} Under the *Deem* standard, "[p]rovocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force." *Deem*, 40 Ohio St.3d 205, 533 N.E.2d 294, at paragraph five of the syllabus. "In determining whether the provocation was reasonably sufficient * * *, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him *at the time*." (Emphasis added.) Id.

{¶ 23} Uncontroverted evidence did, in fact, show that there was a civil protection order against Liddle, but it was not clearly established by the evidence that he was in violation thereof. Moreover, it is not disputed that Liddle was wearing a jersey shirt and shorts that belonged to Serrano, which were given to him by Serrano's wife, Karissa, who was still married to Serrano, but living with Henry. While the evidence tended to show that the relationships among the various parties were strained, at best, there was absolutely no evidence that Liddle was in the area to harass Rossi when this incident occurred. There was no evidence that Liddle and Karissa had any sort of relationship beyond mere friendship, nor was there any evidence that Liddle attempted to confront Serrano or to incite him in any way on the day of the incident. To the contrary, the evidence tended to show that Liddle was doing everything he could to avoid confrontation with Serrano, first by getting inside the van and locking the door when Liddle heard and saw Serrano approaching and then by escaping the van and running to his own home to summon the police after Serrano attempted to stab him. Even if we were to accept, for the sake of argument, that Henry confronted and threatened Serrano on June 24, 2004, that fact in no way explains why Serrano would be provoked to assault *Liddle*. Henry's involvement in the confrontation occurred only after Serrano approached Henry's vehicle, banged on the window, yelling and screaming, and exhorted Liddle to "[s]tep out here, be a man, about it." A historically stormy relationship between the parties is insufficient, as a matter of law, to support a finding of reasonably sufficient provocation.[1] *Deem*, 40 Ohio St.3d at 211, 533 N.E.2d 294. We therefore hold that the trial court did not commit plain error by not giving jury instructions on the inferior offense of aggravated assault. Serrano's first assignment of error is without merit.

{¶ 24} Serrano's third and fourth assigned errors will be addressed together, since each challenges the trial court's imposition of sentence. In his third assignment of error, Serrano argues that the trial court erred by failing to consider the mitigation factors under R.C. 2929.12(C) and (E) and by not addressing on the record why the imposition of a minimum sentence was not appropriate. In his fourth assignment of error, Serrano complains that the trial

---

1. One certainly might find it logical to conclude that the serious-provocation threshold was crossed if the current live-in boyfriend of appellant's wife conveyed a threat to appellant with a knife. However, an instruction for a lesser offense would be warranted only if the victim of the assault by appellant had been the live-in boyfriend. Absent any evidence that the actual victim threatened appellant or otherwise participated in the confrontation, the lesser-included-offense charge is inappropriate. In this case, all of the evidence indicates that the victim of the assault did everything he could to avoid confrontation with the appellant. There is no evidence whatsoever of serious provocation by the victim, and an instruction on the lesser offense was not warranted.

court impermissibly engaged in judicial fact-finding by imposing a greater-than-the-minimum sentence in violation of his Sixth Amendment right to trial by jury.

{¶ 25} An appellate court reviews a felony sentence under a clear-and-convincing-evidence standard of review. R.C. 2953.08(G)(2). In doing so, we conduct a meaningful review of the imposition of sentence. *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, at ¶ 10. " 'Meaningful review' means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law." Id., citing R.C. 2953.08. Clear and convincing evidence is that quantum of proof that will produce in the mind of the trier of fact a firm belief regarding the facts sought to be established. *State v. Bradford* (Jun. 1, 2001), 11th Dist. No. 2000–L–103, 2001 WL 589271, at *1.

{¶ 26} R.C. 2929.12 dictates that a court must consider all applicable factors that would indicate that the offense was "more serious than conduct normally constituting the offense," factors that would indicate that the offense was "less serious than conduct normally constituting the offense," and the factors that would indicate the offender's likelihood of recidivism. R.C. 2929.12(B), (C), (D), and (E); *State v. Fails* (Nov. 9, 2001), 11th Dist. No. 2000–P–0119, 2001 WL 1402002, at *2; *State v. Cook*, 11th Dist. No. 2003–L–009, 2004-Ohio-793, 2004 WL 323151, at ¶ 14. Furthermore, "[a] trial court may also consider any other factor relevant in achieving the above-stated purposes of sentencing." *Fails*, 2001 WL 1402002, at *2.

{¶ 27} Serrano concedes that the trial court was not required to make an express finding before imposing a prison term instead of a community-control sanction for a second-degree felony. He nevertheless argues that an oral finding at the sentencing hearing should have been necessary when a trial court imposes a prison term under R.C 2929.12 and that otherwise, the record is too vague to review whether the trial court properly balanced the seriousness and recidivism factors during sentencing.

{¶ 28} Serrano's argument flies directly in the face of firmly established precedent on this issue. Courts in Ohio, including this one, have repeatedly held that a trial court is not required to "make specific findings on the record in order to evince the requisite consideration of the applicable seriousness and recidivism factors" under R.C. 2929.12. *State v. Arnett* (2000), 88 Ohio St.3d 208, 215, 724 N.E.2d 793, *State v. McAdams*, 162 Ohio App.3d 318, 2005-Ohio-3895, 833 N.E.2d 373, at ¶ 8; *State v. Matthews*, 11th Dist. No. 2003–L–043, 2004-Ohio-1849, 2004 WL 765579, at ¶ 15. Serrano's third assignment of error is meritless.

{¶ 29} In his fourth assignment of error, Serrano challenges the constitutionality of his sentence, arguing that he was given a sentence "greater than the statutorily prescribed maximum that was based upon facts not submitted to a jury and proven beyond a reasonable doubt." Serrano takes the opportunity here not to attack any specific actions of the trial court in imposing sentence, but rather argues that Ohio's statutory sentencing scheme is presumptively unconstitutional, since it requires the judge to make certain statutorily enumerated findings to overcome the presumption of a minimum sentence. Serrano maintains that the four-year sentence the trial court imposed on him, when the minimum sentence for a second-degree felony is two years, violates the dictates of *Blakely v. Washington*, (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403, and its progeny. We disagree.

{¶ 30} The holding in *Blakely* refined the rule of *Apprendi v. New Jersey* (2000), 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435, which held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490, 120 S.Ct. 2348, 147 L.Ed.2d 435. Pursuant to R.C. 2929.14(B)(1), a court "shall impose the shortest term authorized for the offense * * * unless * * * the offender previously had served a prison term."

{¶ 31} For second-degree felony convictions, a trial court may impose a term of incarceration ranging from two to eight years. R.C. 2929.14(A)(2). In this case, the trial court ordered a sentence of four years, based upon the court's "finding" that Serrano had previously served a term of incarceration. This court has repeatedly held that a trial court is constitutionally entitled to take judicial notice of a defendant's prior prison term when imposing a greater-than-minimum sentence within the statutorily prescribed range. *McAdams*, 162 Ohio App.3d 318, 2005-Ohio-3895, 833 N.E.2d 373, at ¶ 21; *State v. Acevedo*, 11th Dist. No. 2002–A–0109, 2005-Ohio-3267, 2005 WL 1503716, at ¶ 45; *State v. Taylor*, 158 Ohio App.3d 597, 2004-Ohio-5939, 821 N.E.2d 192, at ¶ 25; *State v. Colbert*, 11th Dist. No. 2003–A–0114, 2005-Ohio-2524, 2005 WL 1208814, at ¶ 32 (O'Neill, J., dissenting). Serrano's fourth assignment of error is without merit.

{¶ 32} For the foregoing reasons, we affirm the judgment of the Portage County Court of Common Pleas.

Judgment affirmed.

RICE, J., concurs.

O'NEILL, J., dissents.

WILLIAM M. O'NEILL, J., dissenting.

{¶ 33} I must respectfully dissent. On a plain-error analysis, it is clear that appellant was entitled to have the jury consider the lesser offense of aggravated assault. The essential difference between the crimes of felonious assault and aggravated assault is the existence of serious provocation leading up to the use of deadly force. As stated by the Supreme Court of Ohio, "in a trial for felonious assault, where the defendant presents sufficient evidence of serious provocation, an instruction on aggravated assault must be given to the jury." [2]

{¶ 34} The majority is correct that the evidence does indeed present a picture of overlapping personal histories and relationships. The victim was wearing appellant's clothes at the time of the attack. Apparently, they had been given to him by appellant's wife. She now lived with the victim's friend, who threatened to cut appellant's throat. Depending on whose testimony one believes, the victim either was or was not in violation of a civil protection order to stay away from the trailer of his former girlfriend. In turn, the former girlfriend ended up being the current girlfriend of appellant. Leaving these niceties in the analysis of the crime of felonious assault aside for the moment, however, I choose to address the question of serious provocation at the time of the attack.

{¶ 35} I would hold, as a matter of law, that when one's wife's current, live-in boyfriend approaches that person during a trailer-park dispute with a knife in his hand and states, "Come over here, mother fucker, I'm going to slit your throat," the threshold for "serious provocation" has been crossed. To hold otherwise defies logic.

{¶ 36} The jury was entitled to an instruction on aggravated assault so that it would be able to do its job and sort out this whole sordid mess. It is improper to limit the jury's access to all appropriate jury instructions when the facts clearly support several different versions of the crime in question.

{¶ 37} I do not know whether appellant would be successful in convincing anyone that he was provoked into drawing his knife. However, that is not the legal standard. It is for the jury to decide whether there was serious provocation, and, in this case, it was prevented from doing its job.

---

**2.** *State v. Deem* (1988), 40 Ohio St.3d 205, 533 N.E.2d 294, paragraph four of the syllabus.