OPINION
{¶ 1} In the instant appeal, submitted on the record and briefs of the parties, defendant-appellant, Roddy L. Hale, appeals his judgment of conviction on one count of Felonious Assault, with a Firearm Specification. We affirm the judgment of the lower court.
 {¶ 2} The aforementioned charges arose from an incident which occurred at approximately 3:45 p.m., on June 17, 2006, in Windham, Ohio, in which Joseph Proctor *Page 2 
was shot in the leg with a .22 caliber handgun by Hale. Approximately ten days after the incident, Hale turned himself into Windham police.
 {¶ 3} On July 6, 2006, the Portage County Grand Jury returned a single count indictment against Hale for Felonious Assault, a felony of the second degree, in violation of R.C. 2903.11(A)(2), with an associated Firearm Specification, pursuant to R.C. 2929.14(D) and 2941.145. On July 14, 2006, Hale entered a plea of not guilty to the charges.
 {¶ 4} Jury trial commenced on December 5, 2006. The jury found Hale guilty on December 7, 2006.
 {¶ 5} On January 26, 2007, Hale was sentenced to four years on the Felonious Assault charge, with an additional mandatory three year sentence for the Firearm Specification, for a total sentence of seven years.
 {¶ 6} Hale timely appealed the trial court's judgment of conviction and sentence, assigning the following as error for our review:
 {¶ 7} "[1.] Appellant's conviction for felonious assault with a firearm specification was contrary to the manifest weight of the evidence.
 {¶ 8} "[2.] The trial court erred in failing to grant appellant's Criminal Rule 29 motion to dismiss the Felonious Assault charge following the State's case.
 {¶ 9} "[3.] Whether [the] trial [court] erred in not including an instruction to the jury on aggravated assault."
 {¶ 10} For discussion purposes, we will address Hale's assignments of error out of order.
 {¶ 11} In his second assignment of error, Hale argues that the trial court erred to his prejudice by denying his Crim.R. 29 motion to dismiss, since the state failed to prove *Page 3 
that he knowingly caused physical harm, due to "evidence demonstrating] that Hale acted in self-defense." We disagree.
 {¶ 12} Under the Ohio Rules of Criminal Procedure, a defendant may move the trial court for a judgment of acquittal "if the evidence is insufficient to sustain a conviction." Crim.R. 29(A). "[Sufficiency of the evidence * * * challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to theprosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v. Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345, 2001-Ohio-57
(emphasis added).
 {¶ 13} Whether sufficient evidence has been presented is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). Thus, an appellate court will examine the evidence and determine whether that evidence, "if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt." State v. Norwood, 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶ 15, citing State v.Jenks (1991), 61 Ohio St.3d 259, 273 (emphasis added).
 {¶ 14} In order to survive a sufficiency of the evidence challenge for Felonious Assault with a Firearm Specification, the state must offer evidence, which, if believed, would convince the average mind that Hale was guilty, beyond a reasonable doubt, of *Page 4 
"knowingly * * * caus[ing] or attempting] to cause serious physical harm to another * * * by means of a deadly weapon or dangerous ordnance." R.C.2903.11(A)(2).
 {¶ 15} "Knowingly" for the purpose of determining criminal culpability under the Ohio Revised Code is defined as follows: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶ 29, citing R.C. 2901.22(B).
 {¶ 16} "Serious physical harm" is alternatively defined as "[a]ny physical harm that carries a substantial risk of death; * * * [a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; * * * [or], [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering * * *." R.C. 2901.01(A)(5)(b), (d), and (e).
 {¶ 17} "As used in section 2923.11 * * * of the Revised Code * * * `Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed * * * for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). Since a .22 caliber revolver is a weapon "capable of firing a projectile by the action of an explosive propellant," regardless of whether or not it is loaded, it "qualifies as a deadly weapon as a matter of law." State v. Harris (June 10, 1987), 9th Dist. No. 12899, 1987 Ohio App. LEXIS 7543, at *13, citing State v. Meek (1978), 53 Ohio St.2d 35, 39.
 {¶ 18} A review of the record reveals that Hale shot Proctor above the knee with a .22 caliber handgun, and Proctor required medical treatment for his injury. Dr. Brian Kilch, the physician who treated Proctor following the shooting, testified that the bullet caused damage to Proctor's leg, including leaving a bullet fragment lodged in his femur, *Page 5 
which caused a fracture; that Proctor could not bend his knee as a result of the swelling and pain from the wound; that surgery was required that evening due to "concern that the bullet punctured his knee capsule"; that, in this particular case, the bullet could not be removed from Proctor due to the risk of further injury; and that bullet wounds to extremities "can be life threatening if it hits an artery," although that did not happen in Proctor's case. Based upon these undisputed facts, and viewed in a light most favorable to the state, sufficient evidence was offered to prove each element of the crime beyond a reasonable doubt, such to allow the matter to go to the jury.
 {¶ 19} Contrary to Hale's assertions, evidence related to self-defense is irrelevant within the context of a sufficiency of the evidence argument.
 {¶ 20} A sufficiency review is to be applied to the substantive elements of a crime as defined by state law. State v. Levonyak, 7th Dist. No. 05 MA 227, 2007-Ohio-5044, at ¶ 40, citing Jackson v.Virginia (1979), 443 U.S. 307, 324 n. 16. "Under Ohio law, self-defense is an affirmative defense." Id. (citations omitted). A review under the sufficiency of the evidence standard does not apply to affirmative defenses, since "such a review does not consider the strength of defensive evidence," and since "proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime." Id., citingState v. Jennings, 10th Dist. No 05AP-1051, 2006-Ohio-3704, at ¶ 28; accord, State v. Harrison, 10th Dist. No 06AP-827, 2007-Ohio-2872, at ¶ 23.
 {¶ 21} Hale's second assignment of error is without merit.
 {¶ 22} In his first assignment of error, Hale challenges his conviction for Felonious Assault as being against the manifest weight of the evidence. Specifically, Hale argues that the jury's verdict was against the manifest weight of the evidence, *Page 6 
since the evidence, as a whole, clearly established that he acted in self-defense. We disagree.
 {¶ 23} In contrast to a sufficiency of the evidence challenge, manifest weight of the evidence raises a factual issue and involves "the inclination of the greater amount of credible evidence." State v.Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52 (emphasis sic) (citation omitted). Where "sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support the verdict as a matter of law, * * * weight of the evidence addresses the evidence's effect of inducing belief." State v. Wilson, 113 Ohio St.3d 382,2007-Ohio-2202, at ¶ 25 (citation omitted). "In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" Id.
 {¶ 24} Generally, the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine. State v. Thomas (1982), 70 Ohio St.2d 79, at syllabus. When reviewing a manifest weight challenge, the appellate court sits as the "thirteenth juror." Thompkins, 78 Ohio St.3d at 387. As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed * * *." Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175.
 {¶ 25} The reviewing court may only exercise its discretionary power to reverse a judgment as being against the manifest weight of the evidence only in "those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable [trier of fact] could have found the *Page 7 defendant guilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175 (emphasis added).
 {¶ 26} "Pursuant to R.C. 2901.05, self-defense is an affirmative defense which the defendant must prove by a preponderance of the evidence." State v Sledge, 11th Dist. No. 2001-T-0123, 2003-Ohio-4100, at ¶ 23 (citations omitted). Thus, to establish a viable self-defense claim, a defendant must show "(1) that [he] was not at fault in creating the situation giving rise to the affray; (2) that [he] had a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) that [he] did not violate any duty to retreat or avoid the danger." Id., citing State v. Barnes, 94 Ohio St.3d 21, 24,2002-Ohio-68; Levonyak, 2007-Ohio-5044, at ¶ 44 (citations omitted).
 {¶ 27} It is a well-established principle of law that the "elements of self-defense are cumulative * * *. If the defendant fails to prove anyone of these elements by a preponderance of the evidence[,] he has failed to demonstrate that he acted in self-defense." State v.Cassano, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶ 73, quoting State v.Jackson (1986), 22 Ohio St.3d 281, 284 (emphasis sic).
 {¶ 28} Hale argues that inconsistencies in the trial testimony regarding which party arrived first at the school parking lot, along with conflicting evidence as to whether words were exchanged between Hale and Proctor prior to the incident demonstrate, by a preponderance of the evidence, that he was not the initial aggressor. Hale further argues his own testimony at trial, corroborated by that of Scales, Houghton, and Baer, established, by a preponderance of the evidence, that he had a bona fide belief that he was in imminent danger of serious bodily harm at the hands of Proctor before he fired the gun. We disagree. *Page 8 
 {¶ 29} In the instant matter, the following testimony was adduced at trial. Dodele Houghton was sitting on her porch at 9020 Maple Grove Road with her friend, Jessica Baer, when she heard yelling and observed Hale, who was sitting in a gold four-door vehicle with an unidentified male (later established at trial to be Richard Scales), arguing with Proctor, who had been walking down the street. Although Houghton could not hear what was said at the time of the initial confrontation, she stated that Hale and the other male drove to the Katherine Thomas Elementary School parking lot, a distance of about 100 yards away, and saw Proctor jogging toward the school as if he were "in a hurry to get there," and looking as if he were going to fight the two men.
 {¶ 30} Houghton testified that she saw Hale step from the vehicle and appear to pull something from his belt, when Proctor was standing approximately three to five feet from Hale. Houghton heard three gunshots, and saw Hale and his companion quickly drive away from the scene. Houghton stated that as she saw Hale pull out of the school parking lot, she heard him shout "something about `Next time I would kill you.'" She then observed Proctor walk back toward where she and Baer were sitting, at which time she saw blood on his shin.
 {¶ 31} At trial, Baer testified that she saw Hale drive by Proctor and that it "looked like [Hale] said something" to him. Baer testified that she then saw "Joey Proctor walk up to [the school] and Roddy Hale driving there, and [I'm] pretty sure I seen [sic] [Hale] get out of the car and then [it] looked as if Joey was going to punch him and I heard a couple gunshots." Baer testified that after she heard the shots, Proctor walked away and she heard him yell at Hale that "[it was] is okay, I can take a .22," and Hale say in response something like "Next time I'll kill you" and "I told you not to mess with me." *Page 9 
 {¶ 32} Proctor also testified at trial, and acknowledged that he had "words" with Hale the previous evening. With regard to the encounter the previous night, Proctor testified as follows:
 {¶ 33} "[T]he night before this happened I guess [Hale] got in an altercation with some woman, came to where I was. He seemed agitated. I asked if he had a problem, he said yeah, [and] started cussing and swearing and throwing his hands up. I didn't want to fight. I will not lie, I have been in fights all my life. If somebody tries to assault me, I will defend myself. Wasn't any physical altercation, just words."
 {¶ 34} When asked how the altercation initially occurred, Proctor replied, "[h]e involved me. I was near his girlfriend or whatever."
 {¶ 35} Regarding the shooting incident, Proctor testified as follows: "they had wrapped around me twice in the vehicle, playing their music loud, throwing hands in the air. I didn't see any alterative [but] to confront the situation."
 {¶ 36} Michael Bowland, who lived at 9035 Maple Grove, testified that he was sitting on his front porch shortly after the shooting occurred, and saw "the victim that was shot walking down the road * * * and then * * * a gold car [drove past] with a man hanging out the window saying he's going to come back and he'll get him." Bowland identified the man in the car as Hale.
 {¶ 37} Scales, testified for the defense, revealing that he was with Hale both on the evening before, and the day of the shooting incident.
 {¶ 38} With regard to the altercation the evening prior to the shooting, Scales testified that he and Hale were walking toward the Circle K in Windham, when they encountered Proctor standing across the street from them, "arguing with someone," and that Proctor and Hale began having words. Scales stated that Hale and Proctor "was *Page 10 
basically just going at it like * * * cats and dogs or something. Like they was just basically in each other's face or something." Scales stated that "Joseph threatened — said something about leaving [Hale] * * * in a puddle of blood and popping him or something like that."
 {¶ 39} Scales stated that after Proctor had threatened Hale, both men walked back across the street, and were talking to somebody else, when Proctor asked "[why] are you all * * * standing there. I'm going to give you * * * something to stand there for," at which time "he ran back, I don't know what he was doing or whatever, but he ran back between the apartment like he was getting something, so we just left."
 {¶ 40} Scales testified that he spent most of the day driving around with Hale listening to music. Eventually, the men drove around "the projects," which Scales testified is arranged "like a circle." According to Scales, the men "rode around probably two times and the second time we saw [Proctor]." Scales stated that he believed Proctor recognized Hale in the car, and saw Proctor was "putting his hands up or whatever," but stated that there was no verbal confrontation. According to Scales, they "ignored him and kept riding because the music was too loud."
 {¶ 41} Scales stated that after passing Proctor, he and Hale decided to stop in the parking lot at Katherine Thomas Elementary School, because the men had recently installed a speaker system in Hale's car and "one of the speakers or something came loose in the back." Scales testified that "we * * * pulled in there and * * * backed in so that we [could] fix the system."
 {¶ 42} They parked the car and opened the trunk, at which time Scales stated that he saw "someone jogging, but I didn't pay no attention, like pay it no mind, [and] * * * took a screwdriver to put a wire back in." Scales testified that by the time he looked up *Page 11 
again, Proctor was "standing directly by the car," and he told them "you * * * better have something in the trunk because you [are] going to have to use it." Scales stated that Proctor then reached toward his waistband as if he was going to produce a weapon, at which point, Hale pulled out a gun and fired "two shots."
 {¶ 43} Hale also testified in his own defense. Hale stated that he and Proctor knew one another for a period of time and were "pretty much cool at first," but then eventually "[Proctor] just got — like when he seen me, he just didn't respect me, like he gave me an attitude and stuff. * * * Like he says stuff to me about my girlfriend or whatever."
 {¶ 44} With regard to the incident the evening before the shooting, Hale testified that Proctor approached him "over * * * by the Sparkle Market. * * * He was arguing with somebody already, going to fight them, then he seen me and started saying stuff to me. * * * [W]e had words like — because * * * — you know, you mad, you going to say stuff, you know. * * * Like, we squared up to fight and he started talking about shooting me. Well he was like I'm going to pop you and stuff like that. * * * That he would leave me in a puddle of blood. Then he like ran back like he was going to get a gun, so that's why we even left and we left from where he was at and he followed us all the way to the street, followed us all the way down to the street and was still yelling stuff."
 {¶ 45} Hale testified that after the aforementioned altercation, he went to Ravenna and purchased a .22 caliber revolver from someone on the street for "protection." Hale stated that he did not go to the police because "where we from, they like against our family. Like my brothers fill out a statement and they just — he went to press charges on the Defendant [sic] and they turned around and put it on him. It's like they don't like our family. They pull me over, search my car, all that." *Page 12 
 {¶ 46} Hale stated that after obtaining the gun, he kept it in his car because he "didn't have no choice," that he "didn't want to ride around with it," but he also "didn't want to disrespect his mom by bringing a weapon into her home."
 {¶ 47} Hale testified that the next day he was supposed to go to a party that afternoon and was "riding around" with Scales. He stated that he saw Proctor walking down the street, and "he started throwing his hands up, but I just didn't pay attention * * * [and] kept riding down the street. Hale claimed that no words were exchanged, because he could not hear while the music is playing in his car.
 {¶ 48} Hale said that he began to experience problems with the speaker in the car, so he decided to stop at the elementary school. He stated that because Proctor was "way down at the other end" of the street, he "didn't think * * * [Proctor] seen us turn in there."
 {¶ 49} Hale testified that he "saw somebody jogging down the street, and [Scales] "was like, Roddy, look up, next thing you know, like, I look up and here he is, he's like yelling stuff, all crazy, saying `he was going to leave me in a puddle of blood,' and told them that he hoped they `got something because you going to need it,'" at which point, Hale produced the gun and shot at Proctor twice.
 {¶ 50} Based upon our review of the evidence, we are not convinced that Hale established any of the elements of self-defense by a preponderance of the evidence.
 {¶ 51} Although Proctor acknowledged, consistent with Scales' and Hale's testimony, that he followed them to the school, "figuring that] I would face [Hale] head up and get it over with," this does not necessarily lead to a conclusion that Proctor was the initial aggressor that day. *Page 13 
 {¶ 52} Despite the fact that there was evidence, in Proctor's testimony that he had been in trouble with police before for "fighting, resisting arrest, disorderly [conduct and] public intoxication," there was competent, credible evidence to support the jury's conclusion that Hale was not entitled to acquittal based upon self-defense.
 {¶ 53} When assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. This is because it is "the trier of fact who is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." State v. Dach, 11th Dist. No. 2005-T-0048 and 2005-T-0054, 2006-Ohio-3428, at ¶ 42 (citation omitted).
 {¶ 54} With regard to the first element, i.e., whether Proctor was the initial aggressor on the day of the shooting, the evidence, at best, is evenly divided. First, there was no evidence, other than Scales' and Hale's self-serving testimony, that Proctor initiated the confrontation that day. Second, regardless of whether Hale or Proctor arrived at the parking lot first, the testimony of Houghton and Baer, two independent witnesses, corroborated with that of Proctor, who claimed that Hale and Scales initiated the confrontation on the street before driving to the school. Even if we were to assume, arguendo, that Hale had satisfied this element by a preponderance of the evidence, there is no evidence that either of the other two elements were satisfied.
 {¶ 55} With regard to the second element of self-defense, both Proctor's and Baer's testimony indicated that Proctor was going to engage in a fistfight with Hale. Despite Hale's claim that Proctor made a move to reach toward his waistband for a weapon when he encountered them in the parking lot, there was no evidence to show *Page 14 
that Proctor possessed a weapon at any time during the altercation. "In a self defense case, the degree of force permitted depends on what isreasonably necessary to protect that individual from the imminent use of unlawful force." Levonyak, 2007-Ohio-5044, at ¶ 48, quoting Akron v.Dokes (1986), 31 Ohio App. 24, 25.
 {¶ 56} Furthermore, Hale's claim that he had a bona fide belief that he was in danger of death or serious bodily harm is weakened by the fact that he acknowledged that the evening prior, he had "squared up to fight," Proctor because he was "mad" that Proctor had said things about his girlfriend. "Shooting someone who calls you a name and [attempts to] punch you * * * is more force than is reasonably necessary to protect one's self." Id.
 {¶ 57} Hale also failed, based solely upon his own testimony, to establish the third element of self-defense, i.e., that he satisfied his duty to retreat to avoid the danger. Although he initially stated upon direct examination that he did not see Proctor approach until he was a short distance away and it was too late to get away, he later testified on cross-examination that he first noticed Proctor approaching when "he got on the main strip" leading to the school, "[p]robably like fifty yards" away.
 {¶ 58} This evidence, along with the undisputed evidence that Hale had purchased an illegal handgun the night before the shooting, immediately disposed of it after the shooting, and avoided apprehension for ten days after the incident, further bring Hale's credibility into question.
 {¶ 59} It is well-settled that "the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it."Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at *8. If the evidence is *Page 15 
susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 60} We conclude, based upon the foregoing testimony and evidence, that the jury did not lose its way or create a manifest miscarriage of justice, by rejecting Hale's self-defense claim.
 {¶ 61} Hale's first assignment of error is without merit.
 {¶ 62} In his third assignment of error, Hale argues that the trial court committed reversible error by denying his request to instruct the jury on the lesser offense of Aggravated Assault. We disagree.
 {¶ 63} As a general matter, "it is within the trial court's sound discretion to determine whether the evidence presented at trial requires a particular jury instruction." State v. Sweeney, 11th Dist. No. 2006-L-252, 2007-Ohio-5223, at ¶ 60 (citation omitted). "Accordingly, the court's decisions regarding jury instructions will not be overturned absent some evidence that the court abused its discretion." Id. An abuse of discretion is more than mere error of law or judgment, rather it implies the court's attitude was unreasonable, arbitrary or unconscionable. Id. at ¶ 22.
 {¶ 64} As this court has previously noted "aggravated assault is not a lesser included offense of felonious assault * * *. Instead, the former is an inferior degree of the latter." State v. Jordan, 11th Dist. No. 2005-T-0049, 2006-Ohio-3425, at ¶ 15 n. 1; accord Levonyak,2007-Ohio-5044, at ¶ 17 (citations omitted). "The Supreme Court of Ohio has explained that `an offense is an "inferior degree" of the indicted offense where its elements are identical to or contained within the indicted offense, except for one or more additional mitigating elements which will generally be presented in the defendant's *Page 16 
case." Jordan, 2006-Ohio-3425, at ¶ 15 n. 1, citing State v. Deem (1988),40 Ohio St.3d 205, 209 (emphasis sic).
 {¶ 65} "Deem stands for the proposition that, when a defendant presents sufficient evidence of serious provocation in a trial for felonious assault, `an instruction on aggravated assault * * *must be given.'" State v. Serrano, 164 Ohio App.3d 103, 2005-Ohio-5606, at ¶ 21 (citation omitted) (emphasis sic), reversed on other groundsIn re Ohio Criminal Sentencing Statutes Cases, 109 Ohio St.3d 313,2006-Ohio-2109. However, "under the Deem standard, `provocation, to be serious, must be reasonably sufficient to bring on extreme stress and * * * incite or * * * arouse the defendant into using deadly force.'" Id. at ¶ 22, citing Deem, 40 Ohio St.3d 205, at paragraph five of the syllabus. "In determining whether the provocation was reasonably sufficient * * *, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at thetime." Id. (citation omitted) (emphasis sic).
 {¶ 66} "The analysis of sufficient evidence of adequate provocation requires a two-part inquiry. First, an objective standard must be applied to determine whether the alleged provocation is reasonably sufficient to bring on a sudden passion or fit of rage." State v.Cayson, 11th Dist. No. 2004-T-0118, 2006-Ohio-2011, at ¶ 18, citingState v. Mack, 82 Ohio St.3d 198, 201. "The provocation must beoccasioned by the victim and `must be sufficient to arouse the passions of an ordinary person beyond the power of his or her control.'" Id., citing State v. Shane (1992), 63 Ohio St.3d 630, 635. "If the objective standard is met, the inquiry shifts to a subjective standard, to determine whether the defendant in the particular case `actually was under the influence of sudden passion or in a sudden fit of rage.'" Id. (citation omitted). *Page 17 
 {¶ 67} The record fails to show any evidence of provocation sufficient to warrant an Aggravated Assault instruction. Hale's claims that Proctor angered him by talking about his girlfriend and threatening to "pop" Hale or "leave him in a pool of blood" on the night before the shooting are not sufficient, since "past incidents or verbal threats do not satisfy the test for reasonably sufficient provocation when there is sufficient time for cooling off." Mack, 82 Ohio St.3d at 201 (citation omitted).
 {¶ 68} Hale's claim that he was afraid of Proctor due to his alleged threats and actions on the day of the incident, is likewise insufficient to satisfy the element of "sudden passion or fit of rage." "[W]ords alone will not constitute reasonably sufficient provocation to incite the use of deadly force in most situations." Id., citing Shane,63 Ohio St.3d 630, at paragraph two of the syllabus. Moreover, "[f]ear alone is insufficient to demonstrate the kind of emotional state necessary to constitute sudden passion or fit of rage." Id. (citations omitted).
 {¶ 69} Hale's third assignment of error is without merit.
 {¶ 70} For the foregoing reasons, we affirm the judgment of the Portage County Court of Common Pleas.
MARY JANE TRAPP, J., concurs.
COLLEEN MARY OTOOLE, J., dissents with a Dissenting Opinion.