{¶ 1} In the instant appeal, submitted on the record and the briefs of the parties, defendant-appellant, Mildred Gregg, appeals the judgment of the Ashtabula County Court of Common Pleas, following a trial by jury, convicting her of one count of Engaging in a Pattern of Corrupt Activity, a felony of the second degree, in violation of R.C.2923.32(A)(1) and (3), one count of Grand Theft, a felony of the fourth degree, in violation of R.C. 2913.02, and one count of Forgery, a felony of the fourth degree, in *Page 2 
violation of R.C. 2913.31. For the reasons that follow, we affirm the judgment of the trial court.
 {¶ 2} Gregg served as treasurer of the Ashtabula Antique Engine Club ("the club") for eight years. The club, which is run by volunteers, is a 501(C)(3) non-profit corporation formed to preserve antique farm machinery, display the machinery, and display items of historical significance. The club derives its income from the sponsorship of two main shows a year, as well as four to five other events held on the grounds throughout the year. The club also provides food service during these events, from which it derives additional income.
 {¶ 3} Gregg was originally nominated to her post as treasurer by members who believed that she possessed prior accounting and bookkeeping experience. Throughout Gregg's tenure, the club's financial process was unsophisticated. Although the club had an audit committee, the extent of the financial controls up until 2001 consisted of the three audit committee members comparing the club's financial ledger and profit and loss statements, which were prepared by Gregg, with the bank statements.
 {¶ 4} Sometime in 2001, members began to express concern about the club's finances. Among the reasons for the club members' concern was the receipt of a delinquent sales tax notice. In November 2001, the club held its annual nominations for the Treasurer position. Rather than nominating Gregg, the members instead nominated and elected Tom Boos as the new treasurer.
 {¶ 5} After his election, Boos requested that Gregg provide him with the financial records for the club. In response to this request, Gregg provided Boos with a fresh book of checks, a checkbook register containing only an opening balance, a *Page 3 
monthly profit and loss statement for December 2001, and several bills that were due to be paid. Boos insisted that an audit of the club's 2001 financial statements be conducted. To this end, the club's audit committee, consisting of Ted Seifert, Linda Lipps, Dan Lazor, and Larry Lipps, was assembled.
 {¶ 6} The audit committee held three meetings over a three week period in February 2002. Before the initial meeting, Gregg was asked to attend and provide the committee with all of the financial records in her possession from her tenure as treasurer. At this meeting, Gregg provided the committee with a Ziploc bag containing receipts and a ledger for the year 2001. Boos testified that the receipts were disorganized and "in no particular order." Towards the end of this meeting, Gregg was again asked to bring the remaining records to the next committee meeting. In particular, the audit committee wanted copies of an insurance policy which had been purchased for the club, as well as proof that the sales tax bill had been paid.
 {¶ 7} At the next meeting, Gregg brought additional records. Ed Wharton, the club president, attended this meeting. Boos testified that the records turned over by Gregg at this meeting consisted of boxes and bags containing receipts and financial records from the years 1982 through 1997, as well as additional records from 2001, but that no records were provided for the years 1998 through 2000. An attempt was made at this meeting to organize the records by month, but this effort went on late into the evening, and eventually it was decided to schedule another meeting. The evidence and testimony reveals that there is some disagreement as to whether two or three boxes of records were brought to the second meeting. A third meeting followed. Boos testified that he did not take physical custody of the records at the end of the second meeting, but took custody of the records after the third meeting of the audit committee. *Page 4 
 {¶ 8} After failing to receive bank statements, cancelled checks, and check registers for the years 1998 through 2000, Boos requested permission from club officers to obtain copies of the club's past bank statements from Cortland Bank. This request was granted.
 {¶ 9} In July of 2002, Boos entered information from both the ledger and the bank statement into a spreadsheet in order to compare the amounts from each. In his analysis, Boos discovered several discrepancies between the club's ledger and the bank records. Upon further investigation, Boos discovered that many of the checks issued from the club's account were written directly to Gregg and her relatives, including her son, Scott Gregg, Scott's wife, Gina, and Gregg's daughter, Debra Barass, f.k.a. Debra Polley. Furthermore, most of the aforementioned checks were listed in the check register as being made payable to either another party or, in the alternative, listed as void checks.
 {¶ 10} Following Boos' discovery, an independent examination of the club's financial records was commissioned from S.R. Snodgrass, CPAs, in December of 2003. John Kinnunen, a Certified Public Accountant who performed this examination, testified that he independently confirmed Boos' calculations, which indicated over $61,000 of the club's funds had been "taken from the club's treasury and disbursed to people other than or companies other than what was recorded."
 {¶ 11} Kinnunen further reviewed the financial reports and bank statements and discovered an additional $4,231.07 which was was disbursed in this manner. As a result of his investigation, Kinnunen concluded that a total of $66,129.54 had been taken from the club's treasury and disbursed to Gregg and her relatives by fraudulent means. *Page 5 
 {¶ 12} As a result of these findings, the club pursued criminal charges against Gregg, Scott Gregg, Gina Gregg and Deborah Barass.
 {¶ 13} On September 21, 2004, the Ashtabula County Grand Jury returned a three count indictment against Gregg, charging her with Engaging in a Pattern of Corrupt Activity, a felony of the second degree, in violation of R.C. 2923.32(A)(1) and (3); one count of Grand Theft, a felony of the fourth degree, in violation of R.C. 2913.02; and one count of Forgery, a felony of the fourth degree, in violation of R.C. 2913.31. Gregg pled not guilty to all of the charges.
 {¶ 14} On June 15, 2005, the matter proceeded to a jury trial, which ended in a mistrial. A second jury trial, which lasted three days, commenced on December 12, 2005. At this trial, the jury returned a guilty verdict on all three counts.
 {¶ 15} On March 13, 2006, Gregg was sentenced to a term of two years for Engaging in a Pattern of Corrupt Activity, and one year each for the Grand Theft and Forgery charges, with all sentences ordered to be served concurrently.
 {¶ 16} Gregg timely appealed, assigning the following as error for our review:
 {¶ 17} "[1.] The State produced insufficient evidence to support appellant's convictions for Engaging in a Pattern of Corrupt Activity, a violation of R.C. 2923.32(a)(1)(3) [sic], a felony of the second degree; Theft, a violation of R.C. 2913.02, a felony of the fourth degree; and Forgery, a violation of R.C. 2913.31, a felony of the fourth degree.
 {¶ 18} "[2.] Appellant's convictions for Forgery, Theft, and Engaging in a Pattern of Corrupt Activity were against the manifest weight of the evidence. *Page 6 
 {¶ 19} "[3.] Appellant was denied the effective assistance of trial counsel as guaranteed by the Sixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution."
 {¶ 20} In her first assignment of error, Gregg first argues that there was insufficient evidence to support her convictions. We disagree.
 {¶ 21} At the end of the prosecution's case-in-chief, and again at the close of all evidence, Gregg's counsel moved for acquittal pursuant to Crim.R. 29. The trial court denied these motions.
 {¶ 22} Crim.R. 29(A) provides that "[t]he court on motion of a defendant * * *, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."
 {¶ 23} "[Sufficiency of the evidence * * * challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v.Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345,2001-Ohio-57.
 {¶ 24} Whether sufficient evidence has been presented to allow the case to go to the jury is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v.Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). A reviewing court will not reverse a jury verdict "where there is substantial evidence upon which the jury could *Page 7 
reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Id. citing State v. Eley (1978),56 Ohio St.2d 169, at the syllabus.
 {¶ 25} Thus, an appellate court will examine the evidence and determine whether that evidence, "if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt."State v. Norwood, 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶ 15, citing State v. Jenks (1991), 61 Ohio St.3d 259, 273 (emphasis added).
 {¶ 26} Gregg argues that her conviction for Engaging in a Pattern of Corrupt Activity was based on insufficient evidence, since the state failed to adduce any evidence that she was engaged in an "enterprise" within the meaning of R.C. 2923.31. She further argues that her convictions for Theft and Forgery were likewise based upon insufficient evidence. We disagree.
 {¶ 27} R.C. 2923.32(A)(1), the Engaging in a Pattern of Corrupt Activity statute, states that: "[n]o person * * * associated * * * with any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *."
 {¶ 28} R.C. 2923.31(E) defines a "Pattern of corrupt activity" as "two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event."
 {¶ 29} R.C. 2923.31(C) defines "Enterprise" for the purposes of R.C.2923.32 as including "any individual, * * * or group of persons associatedin fact although not a legal entity," including "illicit as well as licit enterprises." (Emphasis added). As is plain from the terms of the statue "the legislature defined this term broadly to encompass even a *Page 8 
single individual," and thus, there is no requirement that "an enterprise must be a formal, structured organization" as suggested by Gregg. State v. Habash (Jan. 31, 1996), 9th Dist. No. 17071, 1996 Ohio App. LEXIS 281, at *14.
 {¶ 30} "Corrupt Activity" is defined in R.C. 2923.31(I)(2)(c) as "engaging in, attempting to engage in, conspiring to engage in, or soliciting * * * another person to engage in * * * conduct constituting * * * [a]ny violation of section * * * 2913.02* * * [or] 2931.31 * * * of the Revised Code * * *." (Emphasis added).
 {¶ 31} Taken together, sufficient evidence of a pattern of corrupt activity will be adduced, if the state adduces evidence which would tend to show that Gregg either by herself, or in concert with others, engaged in a pattern of activity consisting of two or more independent acts of theft, as defined in R.C. 2913.02 and/or forgery, as defined in R.C.2913.31.
 {¶ 32} "Forgery, as prohibited by Section 2913.31(A) of the Ohio Revised Code, consists of (1) purpose to defraud, or knowingly facilitating a fraud, and (2) * * * forgery of a writing `so that it purports * * * to have been executed at a time or place or with terms different from what was in fact the case.'" Habash, 1996 Ohio App. LEXIS 281, at *10-*11. "Theft by deception consists of: (1) purpose to deprive the owner of property, [and] (2) knowingly obtaining or exerting control over the property, (3) by deception." Id. at *11, citing R.C.2913.02(A)(3). "If the value of the property * * * stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft." State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶ 27, citing R.C. 2913.02(A)(1) and (B)(1).
 {¶ 33} For the purpose of the forgery statute, a "Writing" is defined as "any * * * document * * * or other thing having in or upon it any written, typewritten or printed *Page 9 
matter." R.C. 2913.01(F). The meaning of "Forge" is "to fabricate or create, in whole or in part and by any means, any spurious writing, or to make, execute, alter, complete, reproduce, or otherwise purport to authenticate any writing, when the writing in fact is not authenticated by that conduct." R.C. 2913.01(G).
 {¶ 34} In the instant matter, the state introduced evidence, in the form of testimony from Tom Boos and John Kinnunen, which showed that during Gregg's tenure as treasurer from 1994 until 2001, she prepared a number of checks written to herself, her daughter, her son, and her daughter-in-law which were drawn on the account of the club. Evidence adduced at trial showed that the vast majority of these checks were recorded in the club's ledger as having been written to different payees, were never recorded to the ledger, or were recorded on the ledger as void. Furthermore, there was evidence adduced at trial that the amounts recorded in the ledger for these checks were less than the amounts of the checks themselves, typically by "round numbers," which according to the testimony of Boos, typically meant differences ranging from $50 to $200 per check. These checks were then offset in the ledger by recording amounts paid to legitimate payees in greater amounts than the actual checks negotiated to these legitimate payees.
 {¶ 35} According to the testimony of Boos, the total amount of the checks negotiated over this period to Gregg and her family members that did not match any recorded transactions amounted to $61.898.47. According to Kinnunen's testimony, he confirmed Boos' calculated amounts and found, as the result of his independent examination, an additional amount of $4,231.07 in transactions that was entered on the club's ledger as being payable to other entities than those listed on the checks. *Page 10 
 {¶ 36} With regard to Gregg's Forgery conviction, the "writing" which was "forged" was the club's financial ledger and not the checks themselves. Thus, there is ample evidence which, if viewed in a light most favorable to the prosecution, showing a pattern of fraudulent transactions existing over an eight-year period in which Gregg and others deprived the club of funds in excess of $60,000.
 {¶ 37} "Pursuant to Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." State v.Bridgeman (1978), 55 Ohio St.2d 261, at the syllabus. In other words "[i]f reasonable minds can reach different conclusions as to whether each element of a crime has been proved beyond a reasonable doubt, they clearly might find guilt." Id. at 264 (emphasis sic). Based upon our review of the record, we cannot conclude there was insufficient evidence to sustain Gregg's conviction for each of the charged offenses.
 {¶ 38} Gregg's first assignment of error is without merit.
 {¶ 39} In her second assignment of error, Gregg raises the same issues as in her first assignment of error to support an argument that her convictions on all three charges were against the manifest weight of the evidence. We disagree.
 {¶ 40} Unlike sufficiency of the evidence, manifest weight of the evidence raises a factual issue. "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of the witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new *Page 11 
trial ordered." State v. Thompkins, 78 Ohio St.3d 380, 387,1997-Ohio-52, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 41} The concepts of sufficiency of the evidence and manifest weight of the evidence are distinct. "`Sufficiency' challenges whether the prosecution has presented evidence on each element of the offense to allow the matter to go to the jury, while `manifest weight' contests the believability of the evidence presented." Schlee, 1994 Ohio App. LEXIS 5862, at *13. "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." State v.DeHass, (1967), 10 Ohio St.2d 230, at syllabus. However, when considering a weight of the evidence argument, a reviewing court "sits as a `thirteenth juror'" and may "disagree with the factfinder's resolution of the conflicting testimony." Thompkins,78 Ohio St.3d at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42. "The only special deference given in a manifest-weight review attaches to the conclusion reached by the trier of fact." Id. at 390 (Cook, J., concurring).
 {¶ 42} "A finding on review that the jury's verdict was against the manifest weight of the evidence must be reserved for those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable jury could havefound the defendant guilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4, citing Martin,20 Ohio App.3d at 175 (emphasis added).
 {¶ 43} As mentioned in the first assignment of error, there was evidence presented showing that in the eight years that Gregg served as treasurer for the club, she wrote a number of checks to herself, her son, her daughter, and her daughter-in-law, drawn on the club's account. These checks were listed on the ledger as being *Page 12 
written to other payees for legitimate business purposes or, in the alternative, listed in the ledger as being void checks. Evidence also showed that to offset these transactions, payments made to other payees for legitimate business purposes were inflated on the ledger over the actual check amounts. There was also evidence that none of the checks written to Gregg or her relatives over her entire tenure as treasurer were able to be matched to receipts.
 {¶ 44} Gregg's defense counsel argued that she was an honest, albeit incompetent, bookkeeper, that the checks written to herself and her family members were made for legitimate club expenses, that discrepancies in the ledger were caused by mistakes exacerbated by her health problems, and that the evidence was tampered with or missing.
 {¶ 45} With regard to the issue of missing evidence, Gregg points to inconsistencies in the testimony of prosecution witnesses with their prior trial testimony as proof that evidence had been tampered with. However, "[c]onvictions are not against the manifest weight of the evidence merely because there is conflicting evidence presented at trial." State v. Serrano, 164 Ohio App.3d 103, 2005-Ohio-5606, at ¶18[1], citing State v. Urbin, 148 Ohio App. 3d 293, 2002-Ohio-3410, at ¶ 27; State v. Haydon (Dec. 22, 1999), 9th Dist. No. 19094, 1999 Ohio App. LEXIS 6174, at *19. Moreover, appellate courts will not reverse jury verdicts in cases where there is "substantial evidence upon which a jury could reasonably conclude that all the elements of an offense have been proven beyond a reasonable doubt." Eley, 56 Ohio St.2d 169, at syllabus. The jury, as the finder of fact, was free to consider all of the evidence and *Page 13 
testimony and reach their own conclusions as to Gregg's guilt or innocence. We cannot conclude that this is one of those extraordinary cases where no reasonable jury could find Gregg guilty of the offenses charged.
 {¶ 46} Gregg's second assignment of error is without merit.
 {¶ 47} In her third assignment of error, Gregg argues that her trial counsel was ineffective for electing to go forward with the remainder of her defense without securing the presence of a defense witness, Patricia Smith, who failed to appear in court despite the fact that a subpoena was issued. Gregg further argues that her trial counsel was ineffective for failing to object to the amount of restitution the trial court ordered, since it was not supported by the evidence. We disagree.
 {¶ 48} In determining whether trial counsel's assistance was so ineffective as to justify a reversal of a defendant's conviction, a criminal defendant must satisfy the two-part test set forth inStrickland v. Washington (1984), 466 U.S. 668. To establish a claim of ineffective assistance of counsel, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." Id. at 687.
 {¶ 49} "[T]he proper standard for attorney performance is that of reasonably effective assistance * * * [and] the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action `might be considered sound trial strategy.'" Id. at 689 (citation omitted). *Page 14 
 {¶ 50} In the case sub judice, defense counsel subpoenaed Patricia Smith, a former Assistant County Prosecutor. Mrs. Smith did not appear at trial. Rather than request a continuance, Gregg's defense counsel elected to go forward with the trial, and made the following proffer of Smith's expected testimony:
 {¶ 51} "Her testimony, I believe, would say that on or about the 4th day of March, 2005, after a pre-trial in this Court * * * Mrs. Smith was acting as an Assistant Prosecuting Attorney for the County and myself, my client, * * * her son, * * * and her daughter-in-law, and Dennis Reid, * * * Scott Gregg's attorney, met with her * * *.
 {¶ 52} "At the time she told us that as far as we had made a Motion for Discovery and wanted to go over the exhibits and what she had and she made the statement that there were bags of receipts to go through and she wanted us * * * to sit down one time and to try to go over all these exhibits together so that we weren't — she didn't have to do this at three different occasions."
 {¶ 53} It is well-settled that "[decisions regarding the calling of witnesses are within the purview of defense counsel's trial tactics."Elyria v. Bozman, 9th Dist. No. 01CA007899, 2002-Ohio-2644, at ¶ 21, citing State v. Coulter (1992), 75 Ohio App.3d 219, 230; State v.Toney, 9th Dist. No. 04CA0013, 2004-Ohio-4877, at ¶ 12 (citation omitted). "Reviewing courts must not use hindsight to second-guess trial strategy, and must keep in mind that different trial counsel will often defend the same case in different manners." State v. McCaleb, 11th Dist. No. 2002-L-157, 2004-Ohio-5940, at ¶ 111, quoting State v. Samatar,152 Ohio App.3d 311, 2003-Ohio-1639, at ¶ 88. "Accordingly, errors of judgment regarding tactical matters do not substantiate a defendant's claim of ineffective assistance of counsel." Id. (citation omitted). *Page 15 
 {¶ 54} Based upon the proffer, we cannot conclude that there was a reasonable probability of a different outcome to this case. The proffered testimony, without more, does not support a suggestion that there was a significant amount of evidence that had not been considered or presented at trial. Thus, trial counsel was not deficient for electing to proceed without securing Mrs. Smith's testimony.
 {¶ 55} Gregg also argues that trial counsel was ineffective for failing to object to the amount of restitution ordered by the trial court, since it was not supported by the record. At a minimum, Gregg argues that she should have been given credit for "legitimate expenditures," as evidenced by receipts that could not be matched up with checks, since "numerous persons testified that Appellant often used her own money and credit cards for legitimate expenses of the club."
 {¶ 56} "A sentence of restitution must be limited to the actual economic loss caused by the illegal conduct for which the defendant was convicted." State v. Banks, 2nd Dist. No. 20711, 2005-Ohio-4488, at ¶ 5. "A trial court abuses its discretion when it orders restitution in an amount which has not been determined to bear a reasonable relationship to the actual loss suffered as a result of the offense for which the defendant was convicted." Id., citing State v. Williams
(1986), 34 Ohio App.3d 33, 34. "[T]he establishment of restitution is a judicial function and where questions are raised about the amount of restitution that should be ordered, the trial court must resolve those questions with, if necessary, an evidentiary hearing." Id. (citation omitted). However, "in determining * * * restitution, the trial court need not necessarily conduct an evidentiary hearing." Id. (citation omitted). *Page 16 
 {¶ 57} In imposing its order of restitution, the trial court stated as follows: "According to the presentence report, the amount, at least the documented amount is $66,129.94. Although there are some claims that it could be more than that."
 {¶ 58} The amount of restitution ordered was supported by the testimony of Boos and Kinnaunen and was solely related to those checks that were made payable to Gregg and her relatives, but listed as paid to other entities or voided on the check register. This was sufficient evidence to establish the value of the loss for the purpose of the trial court's restitution order. See State v. Morgan, 11th Dist. No. 2005-L-135, 2006-Ohio-4166, at ¶ 30 ("[The Ohio] cases have stated that the victim may establish the loss through documentary evidence or testimony. No absolute requirement exists that the victim demonstrate the loss through documentary evidence, and we see no valid reason for imposing such a requirement.") (citation omitted).
 {¶ 59} Accordingly, the trial court's order bears a reasonable relationship to the actual loss suffered. Although Gregg now seeks to have this court conclude that her trial counsel was ineffective for failing to argue that $13,000 in unmatched receipts, should have been applied to offset the court's restitution order, she has failed to provide any evidence to connect these receipts to any of the disputed disbursements or her out-of-pocket expenses. In addition, Gregg has also failed to present any evidence which would tend to show that any of these receipts were for legitimate club expenses. To the contrary, testimony from Boos regarding these receipts revealed that several of these receipts could not have been for the benefit the club, due to the nature of the purchases made. Under these circumstances, we cannot conclude that trial counsel was deficient for failing to object to the trial court's restitution order.
 {¶ 60} Appellant's third assignment of error is without merit. *Page 17 
 {¶ 61} For the foregoing reasons, we affirm the judgment of the Ashtabula County Court of Common Pleas.
WILLIAM M. O'NEILL, J., COLLEEN MARY OTOOLE, J., concur.
[1] Reversed on other grounds by In re Ohio Criminal SentencingStatues Cases, 109 Ohio St.3d 313, 2006-Ohio-2109. *Page 1