OPINION
{¶ 1} Defendant-appellant, Clarence R. Anderson, appeals the judgment entry of the Portage County Court of Common Pleas, in which he was found guilty of two counts of Felonious Assault in violation of R.C. 2903.11(A)(2) each with a Firearm Specification, in violation of R.C. 2929.14 and R.C. 2941.145, and sentenced to twenty years in prison. For the following reasons, we affirm the decision of the trial court. *Page 2 
 {¶ 2} On January 18, 2006, the Portage County Grand Jury indicted Anderson on two counts of Felonious Assault, felonies in the second degree, in violation of R.C. 2903.11. Anderson entered a not guilty plea on both counts and the matter proceeded to a jury trial.
 {¶ 3} On October 30, 2007, a trial was held. The State presented testimony from two victims, two eyewitnesses, three Streetsboro Police Officers, and a Forensic Scientist.
 {¶ 4} One of the victims, Aimee Ross, testified to the following at trial. On September 17, 2005, in the early morning, she was visiting her coworkers at Scorcher's bar in Streetsboro. She was not scheduled to work that night; however, she remained at the bar after closing while her friends, Daniel Molnar, Scott Weinkamer, and Hanne Muri, prepared the bar for closing. The four exited the building in the rear, where the employees park, said goodbye and Aimee went to her car. While she was looking for her keys she heard one of her coworkers say "go across the street and get a ride there, call, no one is going to give you a ride." She then testified that while she was out of her car, "leaning in and looking for something," Anderson appeared, with a gun at his side and said "give me a ride," to which she replied, "no". Anderson then put the gun on her chest and told her to "give [him] a ride or you die." She proceeded to get in her car and yell "he has a gun." She then remembers "feeling the impact from a car and two gunshots going off."
 {¶ 5} Daniel Molnar, the second victim, testified to the following at trial. He was working at Scorcher's in the early morning hours of September 17, 2005, in Streetsboro with Hanne, Scott, and Aimee. Around 3:00 a.m., he was the last to exit the bar. Upon exiting through the rear exit, he noticed Anderson around the corner. Anderson asked *Page 3 
for a ride and Daniel refused and told the rest of the employees to go to their cars. As he got into his car he heard Aimee scream "he's got a gun." Daniel's car was near Aimee's car; the driver's side of Aimee's car was next to the passenger side of Daniel's car. He then proceeded to move his car out of the parking spot and drive his car so it was almost perpendicular to Anderson. He then attempted to hit Anderson with his car. Daniel watched Anderson fire the gun two times, one of the shots hitting Daniel's windshield. Daniel's car hit Aimee's car. He then left his vehicle to check on Aimee. During the commotion, Anderson ran away from Daniel and Aimee. While tending to Aimee, Daniel heard a crash, which he later discovered was caused by Scott's vehicle hitting Anderson.
 {¶ 6} Scott Weinkamer's testimony echoed the sentiment of both Aimee and Daniel's testimony in that the three employees refused Anderson's request for a ride, they later heard Aimee screaming that Anderson had a gun, and then two shots were fired. Scott subsequently, driving in reverse, hit Anderson. The four coworkers then went into the bar and called the police.
 {¶ 7} Hanne Muri's testimony reflected the testimony of her coworkers. She heard Aimee scream that Anderson had a gun. She saw Anderson point the gun at Daniel's windshield and watched him fire two shots. She watched Scott's vehicle back into Anderson. She then called the police.
 {¶ 8} Sergeant Powers of the Streetsboro Police Department testified that he recovered Anderson's .380 caliber semiautomatic handgun with the magazine attached and a live round in the chamber. He also testified that before Anderson was transported to the hospital, Anderson admitted that he had shot the gun because he was scared. *Page 4 
 {¶ 9} Detective Brian Shaffer of the Streetsboro Police Department testified regarding his interview with Anderson. Shaffer testified that during their interview, Anderson disclosed to him his version of the events that took place on the night in question. Anderson said that he went out to purchase a fountain drink at the Circle K in Streetsboro. After leaving the store, Anderson's car was not functioning properly, he claimed that his gas gauge was not working and he was likely out of gas. Anderson then parked his car in front of Scorcher's. He started walking toward Rockne's restaurant when he noticed a light coming from behind Scorcher's. He walked toward the light and asked the people he saw for a ride to a gas station so he could get some gas. After their refusal, he asked another girl for a ride who also refused. Anderson next heard spinning tires in reverse coming at him, he panicked and shot at the car once. Anderson then started running away when another car hit him. When Shaffer asked Anderson the reason he had a gun, Anderson indicated he purchased the gun because he was suicidal. He stated that he did not leave the gun in the car and had placed it in his pocket after he parked his car.
 {¶ 10} Jonathan Gardner, the forensic scientist from the Ohio Bureau of Criminal Identification and Investigation testified that he compared the cartridge found at the scene to a test fire cartridge he retrieved from Anderson's gun found at the scene and although he could not affirm an exact match, he did conclude that they were very similar. He testified that there was no way to deduce how many times a gun had been fired. He also concluded that Anderson's gun was operable.
 {¶ 11} Prior to Anderson's testimony, the defense made a Crim. R. 29 Motion to Dismiss based on insufficient evidence, which was subsequently denied. *Page 5 
 {¶ 12} Anderson testified about his whereabouts on the night in question. He stated that he went to the store to get a fountain pop for fifty-nine cents; he only had a dollar since his "check was due the next day." When he left, his car "started acting up." Anderson "was driving under suspension, so [he] was kind of scared." He got off the road and parked near Scorcher's. When he parked, customers were exiting the bar. He opened the hood of his car, trying to remedy the problem. After discovering he could not fix the car, the customers had already left, so Anderson attempted to walk to a gas station. At the time of the incident, Anderson was on total disability. He had injuries hampering his ability to walk long distances.
 {¶ 13} He acknowledged that he was familiar with Scorcher's because he used to help the bouncers with their duties eight years prior to the incident. He claimed he would occasionally get paid for his services. As he walked around the rear of the building, he saw two guys and a girl standing together and asked them for a ride to the gas station. They told him to "take his fat ass and walk over there. It's not that far." Anderson testified that he did not say a word to them and next walked over to another girl who was bent over in her car. He asked her for a ride and she told him "I don't know you. I'm not giving you a ride anywhere." Anderson then heard tires squealing and saw a car moving toward him. "So [he] turned to go — and [he] had blue sweat pants on and they actually started to fall, so [he] * * * reached to grab [his] pants as [he was] trying to go to the grass * * * then [he] remembered he had the gun". He pulled the gun out of his pants and shot at the oncoming car. He then attempted to run away and was hit by another car. He crawled into a grassy area and heard a man's voice say, "I probably killed that fat mother f**ker." Anderson remained hidden until the police arrived with flashlights. He then called to the police "I'm over here, I don't have a gun, I give up." *Page 6 
 {¶ 14} The jury found Anderson guilty of both counts of Felonious Assault. On December 3, 2007, a sentencing hearing was held. On December 5, 2007, Anderson was sentenced to a 20 year term of incarceration, seven years for each Felonious Assault charge and three years for each Firearm Specification.
 {¶ 15} Anderson timely appeals and raises the following assignments of error:
 {¶ 16} "[1.] The trial court erred in failing to grant Mr. Anderson's Motion For Judgment of Acquittal on all charges as the evidence presented was not legally sufficient to support a conviction.
 {¶ 17} "[2.] The prosecution in this matter engaged in a pervasive pattern of misconduct throughout the proceedings which combined to deprive the appellant of his right to a fair trial.
 {¶ 18} "[3.] Mr. Anderson was denied his constitutional right as guaranteed by the United States and Ohio Constitutions to effective assistance of counsel when his attorney failed to protect Mr. Anderson's rights at trial when Mr. Anderson's trial counsel failed to object to prosecutorial statements concerning crimes which Mr. Anderson had not been charged.
 {¶ 19} "[4.] Mr. Anderson's convictions are against the manifest weight of the evidence.
 {¶ 20} "[5.] The trial court erred to the detriment of Mr. Anderson when it imposed sentence upon him without any review or consideration of R.C. 2929.11 and R.C. 2929.12.
 {¶ 21} "[6.] The trial court erred to the detriment of Mr. Anderson when it failed to merge firearm specifications for purposes of sentencing when all the activity on the part of the defendant arose from a single transaction. *Page 7 
 {¶ 22} "[7.] The cumulative effect of the errors committed by the trial court and by Mr. Anderson's trial counsel combined to deny Mr. Anderson due process and a fair trial as guaranteed by the United States and Ohio Constitutions."
 {¶ 23} In his first assignment of error, Anderson claims that the evidence presented failed to prove the essential elements of the crimes charged beyond a reasonable doubt. We disagree.
 {¶ 24} "[S]ufficiency of the evidence * * * challenges whether the state has presented evidence for each element of the charged offense. The test for sufficiency of evidence is whether, after viewing the probative evidence and the inferences drawn from it, in a light most favorable to the prosecution, any rational trier of fact could find all elements of the charged offense proven beyond a reasonable doubt." State v.Barno, 11th Dist. No. 2000-P-0100, 2001-Ohio-4319, 2001 Ohio App. LEXIS 4280, at *16, citing State v. Jones, 91 Ohio St.3d 335, 345,2001-Ohio-57.
 {¶ 25} Whether sufficient evidence has been presented is a question of law, thus, an appellate court is not permitted to weigh the evidence when making this inquiry. State v. Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *13 (citations omitted). An appellate court will examine the evidence and determine whether that evidence, "if believed, would convince the average mind of a defendant's guilt beyond a reasonable doubt." State v. Norwood, 11th Dist. No. 2005-L-047, 2006-Ohio-3415, at ¶ 15, citing State v. Jenks (1991),61 Ohio St.3d 259, 273.
 {¶ 26} Felonious Assault, pursuant to R.C. 2903.11(A)(2), specifies that "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." "Physical harm" is defined in *Page 8 
R.C. 2901.01(A)(3) as "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 27} "Knowingly" for the purpose of determining criminal culpability under the Ohio Revised Code is defined as follows: "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." State v. Higgins, 11th Dist. No. 2005-L-215, 2006-Ohio-5372, at ¶ 29, citing R.C. 2901.22(B).
 {¶ 28} "Serious physical harm" is defined as "[a]ny physical harm that carries a substantial risk of death; * * * [a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; * * * [or], [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering * * *." R.C. 2901.01(A)(5)(b), (d), and (e). "As used in section 2923.11 * * * of the Revised Code * * * `Deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed * * * for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A).
 {¶ 29} Anderson contends that the State failed to present any evidence which established he caused or attempted to cause physical harm to Aimee Ross or Daniel Molnar.
 {¶ 30} Aimee Ross testified that Anderson placed his gun on her chest and ordered her to "give me a ride or you die." Anderson's weapon was determined to be fully operational and was loaded at the time he pointed his gun at Aimee Ross. The Supreme Court has held that "the act of pointing a deadly weapon at another coupled with a threat, which indicates an intention to use such weapon, is sufficient evidence to *Page 9 
convict a defendant of the offense of `felonious assault' as defined by R.C. 2903.11(A)(2)." State v. Green (1991), 58 Ohio St.3d 239, 241
(citation omitted). Accordingly, the State presented sufficient evidence to convict Anderson of the Felonious Assault of Aimee Ross.
 {¶ 31} Anderson admitted that he fired his weapon at Daniel Molnar's vehicle. Anderson claims that this action was not an attempt to cause physical harm to Daniel Molnar; however, it was to defend himself and escape from the danger of Molnar's oncoming vehicle. Contrary to Anderson's assertions, "evidence related to self-defense is irrelevant within the context of a sufficiency of the evidence argument." State v.Hale, 11th Dist. No. 2007-P-0015, 2007-Ohio-6244, ¶ 19.
 {¶ 32} "A sufficiency review is to be applied to the substantive elements of a crime as defined by state law." Id. at ¶ 20 (citations omitted). "Under Ohio law, self-defense is an affirmative defense." Id. (citations omitted). "A review under the sufficiency of the evidence standard does not apply to affirmative defenses, since `such a review does not consider the strength of defensive evidence,' and since `proof supportive of an affirmative defense cannot detract from proof beyond a reasonable doubt that the accused had committed the requisite elements of the crime.'" Id. (citations omitted). Therefore, the State presented sufficient evidence to convict Anderson of Felonious Assault.
 {¶ 33} Anderson's first assignment of error is without merit.
 {¶ 34} In his second assignment of error, Anderson argues that he was denied his right to a fair trial because the prosecutor engaged in a pervasive pattern of misconduct in the form of statements outside of the facts of the matter. To demonstrate his argument, Anderson relies on a comment by the prosecutor during voir dire, a *Page 10 
comment made during opening statements, and a question presented during cross-examination.
 {¶ 35} The conduct of a prosecutor during trial is not grounds for error unless it deprives a defendant of a fair trial. State v.Maurer (1984), 15 Ohio St.3d 239, 266. The test for prosecutorial misconduct is whether the alleged remark was improper and, if so, whether it prejudicially affected the substantial rights of the defendant. State v. Smith, 87 Ohio St.3d 424, 442, 2000-Ohio-450, citingState v. Smith (1984), 14 Ohio St.3d 13, 14. "Factors which should be taken into account when making this determination include: (1) the nature of the closing remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." State v.Owens, 11th Dist. No. 89-L-14-047, 1990 Ohio App. LEXIS 4891, at *4 (citation omitted). In reviewing allegations of prosecutorial misconduct, it is our duty to consider the conduct in the context of the entire trial. Darden v. Wainwright (1986), 477 U.S. 168, 183 n. 15. Additionally, we recognize that an isolated comment, albeit improper, will not constitute reversible error if it does not deprive the defendant of a fair trial. State v. Jenkins, 11th Dist. No. 2006-T-0058,2007-Ohio-4227, at ¶ 54 (citation omitted).
 {¶ 36} During voir dire, the prosecutor stated, "[t]his case is about a felonious assault, kind of a robbery gone bad." Next, during the cross-examination of Anderson, the following exchange took place:
 {¶ 37} "[Prosecutor] You walked back there because you worked there and, isn't it true, that you figured you could rob someone. That was about the time they carried the drop out; isn't it?
 {¶ 38} "[Appellant's counsel] Objection. *Page 11 
 {¶ 39} "[The Court] Overruled.
 {¶ 40} "[Anderson] I don't know nothing about no drop.
 {¶ 41} "[Prosecutor] You testified you knew about the operations to Mr. Carfalo. Now you don't know nothing about it?
 {¶ 42} "[Anderson] I know the bar, I know that the bar front part is here, behind the kitchen, I never —".
 {¶ 43} Anderson claims that the indication by the prosecutor that the situation was really a "robbery gone bad" "put in the minds of the jury additional crimes which Mr. Anderson was never charged, subjecting him to a biased jury and an unconstitutionally unfair trial." We disagree.
 {¶ 44} Anderson's counsel commented in his opening argument about the case, he stated "was someone trying to rob somebody or take a vehicle or was somebody asking for assistance and just got reigned upon * * * by two guys and two girls * * *. You're going to have to decide what happened here. Was it a robbery or was this utter chaos and someone got hurt and now we've got to maybe cover it up * * *."
 {¶ 45} When the idea of a robbery was mentioned by Anderson's counsel, it cannot be said that the prosecutor's comments about a robbery deprived him of a fair trial. The evidence was strong in the case; with the testimony of Aimee and Daniel as discussed in the assignment of error above, it was clear Anderson met the elements for Felonious Assault. These comments did not deprive Anderson of a fair trial.
 {¶ 46} Finally, during the opening arguments, the prosecutor stated "you are also going to hear from Amy (sic) Ross, that girl in the car. And she will tell you exactly what happened that day to her when this Defendant approached her, pointed a gun at her, *Page 12 
attempted to take her and her car, until her friends, Danny and Scott, came to her rescue with their automobiles."
 {¶ 47} Moreover, the record indicates that Anderson failed to raise an objection to the comment at trial. Since Anderson failed to object to the prosecutor's allegedly improper comment at trial, pursuant to Crim. R. 52(B), such comment must rise to the level of plain error before this court can reverse appellant's convictions. State v. Slagle (1992),65 Ohio St.3d 597, 604. Prosecutorial misconduct rises to the level of plain error if it is clear the defendant would not have been convicted in the absence of the improper comments. Id. at 604-605.
 {¶ 48} Aimee Ross testified that Anderson demanded that she "give [him] a ride or die" then placed his gun against her chest. The comment that Anderson "attempted to take her and her car" is not improbable. This comment did not adversely affect any of Anderson's substantial rights. With the substantial evidence presented about the incident, "it is implausible that the jury determined its verdict based upon these isolated remarks." State v. Tumbleson (1995), 105 Ohio App.3d 693, 700.
 {¶ 49} Anderson's second assignment of error is without merit.
 {¶ 50} In Anderson's third assignment of error, he generally asserts that he received the ineffective assistance of counsel when his counsel repeatedly allowed the introduction of improper statements by the prosecutor.
 {¶ 51} The Ohio Supreme Court has adopted a two-part test to determine whether an attorney's performance has fallen below the constitutional standard for effective assistance. To reverse a conviction for ineffective assistance of counsel, the defendant must prove "(1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the *Page 13 
defendant resulting in an unreliable or fundamentally unfair outcome of the proceeding." State v. Madrigal, 87 Ohio St.3d 378, 388-389,2000-Ohio-448, citing Strickland v. Washington (1984), 466 U.S. 668,687-688. The failure to prove any one prong of this two-part test makes it unnecessary for a court to consider the other prong. Id., citingStrickland, 466 U.S. at 697.
 {¶ 52} We concluded above that the comments Anderson's counsel failed to object to did not adversely affect any of Anderson's substantial rights and, with the evidence presented at trial, it was clear Anderson met the elements for Felonious Assault.
 {¶ 53} In demonstrating prejudice, Anderson must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result would have been different." State v. Bradley (1989),42 Ohio St.3d 136, at paragraph three of the syllabus. For the reasons addressed above in the assignments of error above, there is not a reasonable probability that Anderson's trial would have had a different outcome but for the comments entered into the record without objection.
 {¶ 54} Anderson's third assignment of error is without merit.
 {¶ 55} In his fourth assignment of error, Anderson asserts that his convictions were against the manifest weight of the evidence.
 {¶ 56} Manifest weight of the evidence raises a factual issue and involves "the inclination of the greater amount of credibleevidence." State v. Thompkins, 78 Ohio St.3d 380, 387, 1997-Ohio-52
(citation omitted) (emphasis sic). Although the weight to be given to the evidence and the credibility of the witnesses is primarily for the trier of fact to determine, State v. DeHass (1967), 10 Ohio St.2d 230, at paragraph one of the syllabus, when reviewing a manifest weight challenge, the appellate court sits as the *Page 14 
"thirteenth juror." Thompkins, 78 Ohio St.3d at 387 (citation omitted). As such, the reviewing court must consider all the evidence in the record, the reasonable inferences, the credibility of the witnesses, and whether, "in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed." Id., quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 57} When exploring whether a verdict is against the weight of the evidence we have "repeatedly deferred to the standards of review set forth by the Supreme Court of Ohio." State v. Peck, 11th Dist. No. 2004-L-021, 2005-Ohio-1413, at ¶ 13. Applying the Supreme Court standard, we must exercise our discretionary power to reverse a judgment as being against the manifest weight of the evidence only in "those extraordinary cases where, on the evidence and theories presented, and taken in a light most favorable to the prosecution, no reasonable [trier of fact] could have found the defendant guilty." State v. Bradford (Nov. 7, 1988), 5th Dist. No. CA-7522, 1988 Ohio App. LEXIS 4576, at *4 (citation omitted).
 {¶ 58} Applying the aforementioned standard to this case, and reviewing the evidence in a light most favorable to the prosecution, we must determine if no reasonable jury could have found Anderson guilty of "knowingly * * * [c]aus[ing] or attempt[ing] to cause physical harm to" Aimee Ross and Daniel Molnar "by means of a deadly weapon or dangerous ordnance." R.C. 2903.11(A)(2).
 {¶ 59} When assessing the credibility of witnesses, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. This is because it is "the trier of fact who *Page 15 
is in the best position to observe and evaluate the demeanor, voice inflection, and gestures of the witnesses." State v. Dach, 11th Dist. No. 2005-T-0048 and 2005-T-0054, 2006-Ohio-3428, at ¶ 42 (citation omitted).
 {¶ 60} It is well-settled that "the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it."Warren v. Simpson, 11th Dist. No. 98-T-0183, 2000 Ohio App. LEXIS 1073, at *8. Moreover, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 61} Based upon the analysis in the first assignment of error, we cannot conclude that the jury lost its way or created a manifest miscarriage of justice by returning a verdict of guilty.
 {¶ 62} Anderson's fourth assignment of error is without merit.
 {¶ 63} In his fifth assignment of error, Anderson contends that the trial court erred when it imposed his sentence without any review or consideration of R.C. 2929.11 and 2929.12.
 {¶ 64} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio held that portions of Ohio's felony sentencing law were unconstitutional, and severed those portions. In doing so, the Court held that "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." Id. at paragraph seven of the syllabus. In addition, the Court stated "[o]ur remedy does not rewrite the statutes but leaves courts with full discretion to impose prison terms within the basic ranges of R.C. 2929.14(A) based upon a jury *Page 16 
verdict or admission of the defendant without the mandated judicial findings [of fact] that Blakely prohibits." Id. at ¶ 102.
 {¶ 65} Foster also held that trial courts must still comply with R.C. 2929.11, 2929.12, 2929.13, and the remaining provisions of R.C. 2929.14, and that R.C. 2929.11 and 2929.12 apply as a general guide for every sentencing. Id. at ¶ 36. The Court held that R.C. 2929.11 and 2929.12 do not mandate judicial fact-finding; rather, in exercising its discretion, a court is merely required to "consider" the purposes of sentencing in R.C. 2929.11 and the statutory guidelines and factors set forth in R.C. 2929.12. Id. at ¶¶ 36-42. See, also, State v. Mathis, 109 Ohio St.3d 54,2006-Ohio-855, at ¶ 38.
 {¶ 66} "In applying Foster to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard." State v. Kalish, 2008-Ohio-4912, at ¶ 4.
 {¶ 67} The judgment entry stated that the court "considered evidence presented by counsel, oral statements, any victim impact statements, the pre sentence report and Defendant's statement." During the sentencing hearing, the judge stated that he "did listen to this case. And [he found] it to be one of the worst forms of the offense." He also found that Anderson was "not amenable to community control sanctions and a prison terms [was] required in this case."
 {¶ 68} "Although after Foster the trial court is no longer compelled to make findings and give reasons at the sentencing hearing since R.C. 2929.19(B)(2) has been excised, nevertheless, in exercising its discretion the court must carefully consider the *Page 17 
statutes that apply to every felony case. Those include R.C. 2929.11, which specifies the purposes of sentencing, and R.C. 2929.12, which provides guidance in considering factors relating to the seriousness of the offense and recidivism of the offender." Mathis, 2006-Ohio-855, at ¶ 38. The Supreme Court has acknowledged that "where the trial court does not put on the record its consideration of R.C. 2929.11 and2929.12, it is presumed that the trial court gave proper consideration to those statutes." Kalish, 2008-Ohio-4912, at ¶ 19. "AfterFoster, a trial court can simply impose consecutive sentences, and no reason need be stated." Id. at ¶ 12.
 {¶ 69} Although not required to do so, the judge's comments at the sentencing hearing demonstrate that the judge did consider the seriousness of the crime, he noted that he found the crime to be "one of the worst forms of the offense." This statement also speaks to the purposes of felony sentencing which are "to protect the public from future crime by the offender and others and to punish the offender." R.C. 2929.11. The judgment entry stated that "the evidence presented by counsel, oral statement, any victim impact statement, the pre sentence report and Defendant's statement" were considered by the court. Pursuant to R.C. 2929.14(A)(2), the prison term range for a second-degree felony is two, three, four, five, six, seven, or eight years. In addition, a mandatory Firearms Specification under R.C. 2929.14(D) is three years per felony. Therefore, Anderson's seven-year sentence for each count, plus three years per count for a Firearms Specification, was within the statutory range. We cannot say that the trial court abused its discretion in the sentencing of Anderson.
 {¶ 70} Anderson's fifth assignment of error is without merit.
 {¶ 71} In his sixth assignment of error, Anderson challenges the trial court's failure to merge the Firearm Specifications for the purposes of sentencing. He reasons *Page 18 
that the language in R.C. 2929.14(D)(1)(b) provides that "[a] court shall not impose more than one prison term on an offender under division (D)(1)(c) of this section for felonies committed as part of the same act or transaction."
 {¶ 72} Absent an abuse of discretion, trial courts have authority to impose a prison sentence within statutory range for the offense.Foster, 2006-Ohio-856, at paragraph seven of the syllabus.
 {¶ 73} In State v. Wills, 69 Ohio St.3d 690, 1994-Ohio-417, the Supreme Court of Ohio defined "transaction" as "a series of continuous acts bound together by time, space and purpose, and directed toward a single objective." Id. at 691 (citation omitted). Pursuant to R.C. 2929.14(D)(1)(b), when the underlying felonies are committed as part of one transaction, the trial court is limited to sentence the defendant to one three-year prison term for a single Firearm Specification. State v.Santana, 8th Dist. No. 87170, 2006-Ohio-3843 at ¶ 15.
 {¶ 74} Anderson claims that "all of his activities, toward both Ms. Ross and Mr. Molnar, were part of the same act or transaction, specifically attempting to get a ride to a nearby gas station." We disagree.
 {¶ 75} In Wills, the Supreme Court concluded that the defendant's actions were "not part of a series of continuous acts." Wills,69 Ohio St.3d 691. In Wills, two seventh graders, Eric Stone and Andre Thomas, were walking from school to a bus stop. Wills and two others watched the boys from across the street. Wills approached them and told Stone to give him his Boston Celtics Starter coat. After Stones' refusal, Wills reached inside his jacket and pulled out a handgun. Wills touched Stone's chest with the gun and Stone took off his coat and gave it to Wills. Wills next advanced to Thomas, who had walked across the street, and demanded that Thomas give him his *Page 19 
Cincinnati Bengals Starter jacket. When Thomas refused, Wills punched him in the left jaw, then pulled out a handgun. Wills was found guilty of two counts of Aggravated Robbery, each count including a firearm specification. Wills appealed, claiming that the armed robberies of Stone and Thomas were a single transaction for purpose of the firearms specification statute. The Ohio Supreme Court disagreed, reasoning that "Wills and his cohorts singled out [the first victim] first, surrounded him, pulled out a gun and then under threat of force robbed him. After completing this task they then targeted [the second victim], surrounded him, beat him, pulled out a gun, and then robbed him." Id. The court concluded that "Wills should serve no less time because of the coincidental proximity of his two victims." Id. The court held that "the separate robberies of Stone and Thomas were separate transactions." Id.
 {¶ 76} In the present case, evidence was presented at trial that Anderson told Aimee Ross to "give [him] a ride" and he pressed a gun against her chest. When Daniel Molnar proceeded to drive his car into Anderson, Anderson shot at him then ran away. This evidence demonstrates that the purpose of shooting at Daniel did not further Anderson's purpose of getting a ride from Aimee; he did not continue his attempts with Aimee or Daniel, he simply fled the scene. There was ample evidence presented demonstrating that Anderson's actions were not directed toward a single objective. The trial court did not abuse its discretion in failing to merge the Firearms Specification against Anderson.
 {¶ 77} Anderson's sixth assignment of error is without merit.
 {¶ 78} In his final assignment of error, Anderson argues that the cumulative effect of all the errors committed by the trial court, and by trial counsel, effectively denied him due process and a fair trial. He claims that the errors were of such magnitude *Page 20 
individually that the court must reverse his conviction. We disagree. Anderson's final argument is not well taken because his other assignments of error are meritless.
 {¶ 79} Anderson's seventh assignment of error is without merit.
 {¶ 80} For the foregoing reasons, the judgment entry of the Portage County Court of Common Pleas, finding Anderson guilty of two counts of Felonious Assault in violation of R.C. 2903.11(A)(2) each with Firearm Specification, in violation of R.C. 2929.14 and R.C. 2941.145, and sentencing him to a twenty year prison term, is affirmed. Costs to be taxed against appellant.
CYNTHIA WESTCOTT RICE, J., concurs, COLLEN MARY O'TOOLE, J., concurs in judgment only. *Page 1